## HECHLER CHEVROLET, INC.

### V.

## GENERAL MOTORS CORPORATION AND CAPITAL GMC TRUCKS, INCORPORATED

Record No. 821275

November 27, 1985

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson and Russell, JJ., and Harrison, Retired Justice.

Keith D. Boyette (Everette G. Allen, Jr.; Hirschler, Fleischer, Weinberg, Cox & Allen, on briefs), for appellant.

*E. Milton Farley, III; Charles L. Cabell (Joseph C. Kearfott; John Jay Range; Elmer W. Johnson; John B. Clayton; Hunton & Williams; Cabell, Moncure & Carneal*, on briefs), for appellees.

RUSSELL, J., delivered the opinion of the Court.

This is a contract dispute between a franchised motor vehicle dealer and its manufacturer. The dealer contends that the manufacturer wrongfully terminated or refused to renew the dealer's franchise in violation of Code § 46.1-547(e), part of the Virginia Motor Vehicle Dealer Licensing Act. The dealer further contends that the manufacturer conspired with a competing dealer to interfere with the plaintiff dealer's business.

On June 8, 1981, Hechler Chevrolet, Inc. (Hechler), filed a motion for judgment in four counts against General Motors Corporation (General Motors) and Capital GMC Trucks, Incorporated (Capital). The motion for judgment referred to certain written agreements between Hechler and General Motors which were not made exhibits to the pleading. General Motors filed a motion craving oyer of the agreements on which the action was based. Hechler had no objection, the motion was granted, and the agreements were filed. General Motors and Capital filed demurrers. After considering briefs and arguments, the court sustained both demurrers. Hechler filed a motion for reconsideration and asked leave to file a proposed amended motion for judgment, a copy of which was attached to the motion for leave to amend. Hechler's motions were denied, and the court entered a final order on April 26, 1982, dismissing the motion for judgment with prejudice.

We are, with respect to the court's ruling on the demurrers, confined to the facts alleged in the motion for judgment, as amplified by the agreements added to the record on General Motors' motion. On familiar principles, all facts well pleaded are, for this purpose, to be taken as true. Hechler assigns error to the court's ruling sustaining the demurrers and also assigns error to the court's denial of its motion for reconsideration and for leave to amend.

Since 1971, Hechler had held General Motors franchises which gave it a nonexclusive right to buy, sell, and service Chevrolet passenger cars, Chevrolet light and standard trucks, including light utility vehicles ("LUV" trucks), and Chevrolet heavy duty trucks.

In 1973, Hechler had three separate franchise agreements with General Motors covering each of the above three categories, which were all due to expire on June 30, 1978. On November 1, 1975, while the agreements were in effect, the parties replaced them with a single agreement which was to run from November 1, 1975 until October 31, 1980. It expressly superseded the former agreements. General Motors' stated reason for requesting this change was to make all its dealer franchises expire on the same date nationwide.

The 1975 agreement constituted Hechler an authorized dealer, with an "Area of Primary Responsibility" in the City of Richmond and eight nearby counties, with respect to: "[a]ll Chevrolet passenger cars and Chevrolet light duty, including Chevrolet LUV, medium and heavy duty trucks and truck chassis that are marketed by Chevrolet Motor Division of General Motors Corporation. . . ."

Hechler operated actively under the 1975 agreement until August 29, 1979, when General Motors informed all its Chevrolet dealers who were authorized to sell heavy duty trucks that effective October 31, 1980, General Motors would discontinue the manufacture and sale of heavy duty trucks and truck chassis through its Chevrolet Motor Division, but that it would thereafter manufacture and market such equipment through its GMC Truck and Coach Division.

Before November 1, 1980, General Motors had marketed heavy duty trucks under the "GMC" name and had an existing network of franchised GMC dealers to sell them. These "GMC" heavy duty trucks were identical to Chevrolet heavy duty trucks. Capital was operating under such a GMC franchise in the Richmond area. General Motors informed Hechler that if its franchise were to be renewed for heavy duty trucks, it would have to be as a GMC franchise. Hechler requested that General Motors issue it a GMC franchise, but General Motors refused to do so. In 1979, Hechler's last full year of operations under the 1975 agreement, its gross revenue from the sale and service of Chevrolet heavy duty trucks, chassis, and parts was $218,060.

General Motors points to the following provisions in Hechler's 1975 agreement: "[General Motors has] the right and prerogative . . . to determine the Chevrolet motor vehicles Chevrolet will offer for sale from time to time," and "General Motors may at any time discontinue the manufacture and/or sale of any Motor Vehi-

cle covered under this Agreement, with or without substituting in place thereof another motor vehicle . . . without incurring any obligation or liability to Dealer in connection therewith." General Motors contends that it was acting within the scope of these provisions when it decided to discontinue marketing Chevrolet heavy duty trucks.

Code § 46.1-547 provides, in pertinent part:

It is unlawful for any manufacturer . . .:

. . . .

(e) Notwithstanding the terms of any franchise agreement, to terminate, cancel or refuse to renew the franchise of any dealer, without good cause, and unless (1) the dealer and the Commissioner [of Motor Vehicles] have received written notice of the franchisor's intentions at least sixty days prior to the effective date of such termination, cancellation or the expiration date of the franchise, setting forth the specific grounds for such action, and (2) the Commissioner has determined, if requested in writing by the dealer within such sixty-day period, and after a hearing on the matter, that there is good cause for the termination, cancellation or nonrenewal of the franchise.

The gravamen of Hechler's claim is that General Motors' unilateral act withdrawing Chevrolet heavy duty trucks from the market constituted an unlawful termination of its franchise as to such trucks in violation of § 46.1-547(e); or more precisely, that such action was an unlawful refusal to renew Hechler's franchise because the withdrawal became effective on the date Hechler's franchise was to expire by its own terms. It is conceded that General Motors gave no notice of its intentions to the Commissioner of Motor Vehicles, and General Motors does not contend that it had "good cause" within the meaning of the statute to terminate or refuse to renew Hechler's franchise. Rather, General Motors takes the position that Hechler's franchise continues in effect, that Hechler continues to act as an authorized dealer for all products marketed by General Motors' Chevrolet Division, and that the statute is inapplicable because General Motors merely exercised its contractual prerogative of discontinuing a product line.

■ We agree that the statute is inapplicable. The General Assembly was fully aware of the distinction between terminating franchises and changing product lines when it enacted the Dealer's Act. Code § 46.1-547(d) regulates excessive competition by requiring a manufacturer to submit to the Commissioner's scrutiny its intention to increase the number of dealerships in a trade area "for a particular line—make of motor vehicle." Code § 46.1-547(g) requires equitable distribution among dealers of "each make, series and model covered under the franchise agreement" during shortages of popular models. Thus, it is clear that if the General Assembly, in enacting § 46.1-547(e), had desired to regulate a manufacturer's right to discontinue a product line, it knew how to do so.

■ Cases construing the federal statute popularly known as the Automobile Dealer's Day in Court Act, 15 U.S.C. §§ 1221-1225 (1956), a federal statute similar to the Virginia Dealer's Act, have held that the discontinuance of a particular product does not terminate a dealer's franchise. *Jim Barnett Motors, Inc.* v. *Ford Motor Co.*, 355 F.2d 502 (5th Cir. 1966); *Overseas Motors, Inc.* v. *Import Motors, Ltd.*, 375 F.Supp. 499 (E.D. Mich. 1974), *aff'd.* 519 F.2d 119 (6th Cir.), *cert. denied*, 423 U.S. 987 (1975). The facts in *Jim Barnett* are similar. There, a Ford dealer sued Ford, alleging a violation of the federal dealer's act, when Ford, in 1959, decided to discontinue production of the Edsel. The district court entered summary judgment for Ford which the appellate court affirmed in a per curiam opinion. In *Southern Rambler Sales, Inc.* v. *American Motors Corp.*, 375 F.2d 932 (5th Cir. 1967), the court held that the federal dealer's act did not give a dealer a statutory right to delivery of any particular product or a right to receive vehicles of a particular color, body, or style. *Id.* at 935.

■ We find the reasoning of these cases persuasive and hold that Code § 46.1-547(e) does not extend to the regulation of a manufacturer's right to change or discontinue the production, marketing, or distribution of a particular product line. Thus, the trial court correctly sustained the demurrers as to the first two counts of Hechler's motion for judgment, which were based solely on alleged violations of the Dealer's Act.

Hechler's third count repeats and realleges the facts and claims underlying the first two counts, including General Motors' termination or refusal to renew its heavy duty truck franchise in violation of Code § 46.1-547(e). It then charges that Capital and Gen-

eral Motors, on or about August 29, 1979, conspired to "destroy Hechler as a competitor of Capital in heavy duty truck sales and service" by telling Hechler's customers that Hechler would no longer be selling heavy duty trucks and by enticing key Hechler employees to work for Capital. Hechler's fourth count charges that General Motors and Capital conspired in violation of Code § 18.2-499 (Repl. Vol. 1975) to injure Hechler's trade or business by informing customers that Hechler would no longer be selling heavy trucks, by enticing key employees away, and "by terminating and cancelling the Hechler Franchise and failing to renew the Franchise as a GMC franchise." The fourth count claims treble damages pursuant to Code § 18.2-500 (Repl. Vol. 1975).

A criminal conspiracy is an agreement to commit a crime. *See Wright* v. *Commonwealth*, 224 Va. 502, 297 S.E.2d 711 (1982). A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means. *Werth* v. *Fire Adjust. Bureau*, 160 Va. 845, 855, 171 S.E. 255, 259, *cert. denied*, 290 U.S. 659 (1933). There can be no conspiracy to do an act which the law allows. *Id.* Thus, to survive demurrer, an allegation of conspiracy, whether criminal or civil, must at least allege an unlawful act or an unlawful purpose.

The sole premise of illegality underlying Hechler's third and fourth counts is General Motors' alleged violation of Code § 46.1-547(e), in refusing to renew Hechler's franchise as a dealer for GMC trucks. The counts contain no other allegations of means or ends which are in themselves unlawful.

There are no allegations of unlawful conduct or unlawful purposes on Capital's part at all. If a competitor is in fact about to cease marketing a competing product, it is not unlawful to state that fact truthfully to customers. Neither is it unlawful to entice an employee of a competitor to leave his employment provided no wrongful means are used, and the employment is terminable at will. The cause of action for interference with the contract rights of others stops short of redressing interference with contracts terminable at will provided no improper methods are used, *see Chaves* v. *Johnson*, 230 Va. 112, 121, 335 S.E.2d 97, 103 (1985), and, in the absence of an agreement for a fixed term of employment, contracts of employment are ordinarily terminable at will, *see Bowman* v. *State Bank of Keysville*, 229 Va. 534, 535, 331

S.E.2d 797, 798 (1985). Hechler's motion for judgment does not allege that wrongful means were used to entice its employees to leave, or that its employees' contracts were for a fixed term. Accordingly, our holding that the Dealer's Act was inapplicable to General Motors' action is dispositive of the third and fourth counts as well as of the first and second, and the trial court correctly sustained the demurrers as to all four.

■ Hechler further contends that the trial court erred in refusing to reconsider its ruling and in refusing to grant leave to file an amended motion for judgment. It is true that a trial court may always, in its discretion, decide to reconsider a ruling and that, when a demurrer is sustained, leave to amend should be liberally granted to further the ends of justice. *See* Rule 1:8, Code § 8.01-273. The trial court, however, retains discretion to deny a motion for leave to amend when it is apparent that such an amendment would accomplish nothing more than provide opportunity for reargument of the question already decided. The trial courts labor under increasing burdens, and judicial economy requires that litigants have one, but only one, full and fair opportunity to argue a question of law. The time required to hear a litigant reargue a question a second time must be taken from other litigants who are waiting to be heard. For this reason, motions to reconsider are not favored.

■ Here, the court properly looked to the proposed amended motion for judgment in deciding that reconsideration and amendment would be fruitless. The proposed amendment copied the original motion for judgment, but added references to the earlier franchises which had been superseded by Hechler's 1975 franchise. It also alleged various prior and contemporaneous dealings between Hechler and General Motors which the trial court correctly noted would be barred by the parol evidence rule. The 1975 agreement was clear, complete, and unambiguous. It expressly superseded all prior franchises. Hechler made no contention that it was procured by fraud or duress, or that it failed to express the entire agreement of the parties. Therefore, parol evidence would not have been admissible to vary or explain it. *Lerner* v. *Gudelsky*, 230 Va. 124, 132, 334 S.E.2d 579, 584 (1985). The court's ruling with respect to the amended motion for judgment would necessarily have been based upon the same ground as its original ruling. In these circumstances, the court did not abuse its

discretion by refusing to reconsider its ruling and by denying the motion for leave to amend.

Accordingly, we will affirm the judgment.

*Affirmed.*