## CIRCUIT COURT OF THE CITY OF RICHMOND

Alpheus B. Jones

v.

Pembrooke Occupational Health, Inc.

v.

Roche Biomedical Laboratories, Inc.

January 9, 1992

Case No. LT-920-3

By Judge T. J. Markow

This matter is before the court on the demurrers of the defendant, Pembrooke Occupational Health ("Pembrooke"), and of the third party defendant, Roche Biomedical Laboratories, Inc. ("Roche").

Mr. Jones alleges the following facts: that pursuant to federal law, his employer, TourTime America, Ltd., d/b/a Cavalier Transportation Company, Inc. ("TourTime"), required him to provide a urine sample to Pembrooke for the purposes of drug testing; that Pembrooke erroneously reported a positive test result; that as a result of Pembrooke's error, Jones's employment as a bus driver was terminated.

The first cause of action in Jones's motion for judgment is tortious interference with contract. Pembrooke argues that Jones has failed to state a cause of action since he did not allege that improper methods were employed in order to intentionally interfere with an at-will contract. The court agrees. The court in *Duggin v. Adams*, 234 Va. 221, 226–27, 360 S.E.2d 832 (1987) (quoting *Hechler Chevrolet v. General Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985)), stated the rule as follows: "Where a contract is *terminable at will*, a

plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an *intentional* interference that caused the termination of the at-will contract, but also that the defendant employed '*improper* methods'."

The element of intention is not shown here by the allegation contained in Jones's pleading. The intentional act that Pembrooke made was to report the results of the test. That the consequence of that report was Jones's termination was not the result of any wrongful intent on the part of Pembrooke. Jones has stated no fact that would show or imply that Pembrooke filed the report in order to interfere with his relationship with TourTime.

The court does not need to analyze whether "improper methods" were used since the threshold requirement of intentional interference has not been shown. Pembrooke's demurrer to the first cause of action of tortious interference with contract is sustained.

The second cause of action pleaded by Jones is defamation. Pembrooke argues that the allegedly defaming words were communicated in a context which provides a qualified privilege. "A communication, made in good faith on a subject in which the communicating party has an interest or owes a duty, is qualifiedly privileged if the communication is made to a party who has a corresponding interest or duty." *Smalls v. Wright*, 241 Va. 52, 54, 399 S.E.2d 805, 807 (1991). Applying that rule to the case at bar, the court finds that a qualified privilege did attach to the communication from Pembrooke to TourTime. Pembrooke had an interest in the test results, and TourTime had a corresponding interest. Jones admits that the test was administered pursuant to federal statute, so this was not a gratuitous intermeddling with Jones's business on the part of Pembrooke but was a legitimate interest carried out pursuant to a duty it contracted to undertake for TourTime.

When a qualified privilege attaches to a communication, it may yet be lost if there is common law malice present. This requires "behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made." *The Gazette v. Harris*, 229 Va. 1, 18, 325 S.E.2d 713, 727 (1985) (quoted in *Smalls* at 55). No allegations are made which indicate an such motives on the part of Pembrooke; therefore, the demurrer is sustained as to the second cause of action for defamation.

The court firmly supports the idea of drug testing for employees whose jobs may place the public in danger if done under the influ-

ence of drugs; however, the need to safeguard the livelihood and reputation of those tested by assuring accuracy in the process is great. That a person risks losing the ability to earn a living implicates one of our greatest liberty interests and must be evaluated with suitable gravity. The court is aware that the plaintiff appears in this action *pro se*, and therefore, will allow a period of twenty-one days for him to amend his pleading if he can fashion a theory under which liability can be found.

The demurrer of Roche is moot at this point, since the motion for judgment in the initial suit was insufficient as a matter of law.