958 F.2d 369
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
THAD GRAY ABRASIVES, INCORPORATED; Thaddeus J. Gray,
Plaintiffs-Appellants,
v.
CARBORUNDUM ABRASIVES COMPANY, Defendant-Appellee.
 No. 90-3180.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 29, 1991.
Decided March 20, 1992.
 
 Appeal from the United States District Court for the Western District of Virginia, at Danville. James C. Turk, Chief District Judge. (CA-89-37-D)
 Argued: Robert Wagner Mann, Young, Haskins, Mann & Gregory, P.C., Martinsville, Va., for appellants; James W. Tredway, III, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., for appellee.
 On Brief: Theodore F. Adams, III, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., for appellee.
 W.D.Va.
 AFFIRMED.
 Before WILKINSON and NIEMEYER, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Thad Gray Abrasives, Inc., a distributor of sandpaper, sued Carborundum Abrasives Company, one of its suppliers, for interfering with Gray's business relations by shifting Gray's customers to one of Carborundum's other distributors. Following a four-day trial, the jury returned a verdict for Carborundum. Gray now appeals, alleging that the jury was improperly instructed by the district judge. Finding no reversible error, we affirm.
 
 
 2
 Gray became a distributor of sandpaper for Carborundum beginning in November, 1985. The franchise was nonexclusive and terminable at-will. Gray was free to distribute brands of sandpaper other than the Carborundum brand, and Carborundum was free to franchise other distributors within Gray's marketing area. Although Gray developed a substantial sales volume for the Carborundum brand sandpaper, Carborundum was dissatisfied with Gray, purportedly for other reasons. Gray alleges that after Gray built up sales for the Carborundum brand, Carborundum shifted customers from Gray to another newly-established distributor of Carborundum. While doing so, Carborundum apparently adopted a posture vis-a-vis Gray to play the role of "supportive supplier" while at the same time attempting to shift Gray's accounts from Gray to another more loyal distributor of Carborundum. The facts are complex and vigorously disputed. Gray's counsel were required to expend 34 pages of their brief on appeal simply to state the facts. There can be little argument that the dispute of facts and inferences to be drawn therefrom was properly a question for resolution by the jury and that the jury's finding was amply supported by the facts.
 
 
 3
 Gray contends only that the jury was improperly instructed, arguing that the district court did not follow the Restatement of Torts § 767 and applicable Virginia law when the court failed to instruct the jury that the "improper methods" of interfering with business relationships can include the violation of "established standards of practice in the industry or unfairness." Gray directs our attention to the summary contained in Duggin v. Adams, 360 S.E.2d 832 (Va.1987), which states:
 
 
 4
 Consequently, when a contract is terminable at will, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed "improper methods."
 
 
 5
 Id. at 836 (quoting Hechler Chevrolet v. General Motors Corp., 337 S.E.2d 744, 748 (Va.1985)). In Duggin the court noted that "improper methods" may include violations of established standards of a trade or profession, sharp dealing, overreaching, or unfair competition. Id. at 837. Gray contends that it is a standard in the industry that "employees of the manufacturer are not supposed to engage in behind the back schemes to convert business from one distributor to another."
 
 
 6
 While the specific language of Duggin is not included in the court's instructions to the jury, its substance is. The district court in instructing the jury stated:
 
 
 7
 [T]he burden is on the plaintiff to prove each of the following elements by preponderance of the evidence, by the greater weight to the evidence. First, that the acts of attempting to entice plaintiff's customers to cease dealing with the plaintiff; second, the commission of such acts by the defendant with wrongful intent to injure or destroy the plaintiff's business, and that plaintiff suffered injury or damage in its business as the proximate result of such act or acts.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 If the means of competition are fair, the advantages gained should remain where success has put it. The theory of the tort o[f] wrongful interference of plaintiff's business is that the law draws a line beyond which no one may go in intentionally intermeddling with the business affairs of others.
 
 
 11
 Improper acts or methods may include acts that are illegal.
 
 
 12
 (emphasis added). We cannot say that as a matter of law the district court's summary did not fairly instruct on the applicable principles of Virginia law. While we recognize that the court did not specifically identify the "fair means of competition" to include compliance with the industry standard identified by Gray, we also note that the suggestion by Gray that it is against an industry standard to transfer accounts from one distributor to another so that they do not come into competition with each other is a questionable proposition at best. If it were established that a standard or custom in the industry would have a supplier discouraging competition among its customers so as not to "destabilize" the market, then the custom could well be found to be violative of the public policy favoring competition and therefore not properly includable in an instruction to the jury that advises it of the "improper methods" of interference.
 
 
 13
 All of Gray's arguments, nevertheless, were vigorously argued to the jury and the court's instructions properly permitted the jury to consider them in determining whether unfair or illegal methods of interference were involved. Finding no reversible error, we affirm the judgment of the district court.
 
 
 14
 AFFIRMED.