## CIRCUIT COURT OF FAIRFAX COUNTY

Commercial Roofing and
Sheet Metal Co., Inc.

v.

Gardner Engineering, Inc.,
Jeff James,
and Al Chavies

November 20, 2002

Case No. (Law) No. 205067

BY JUDGE RANDY I. BELLOWS

This matter came before the Court on Defendants Gardner Engineering, Inc.'s ("Gardner") and Jeff James's Demurrer and was argued on Friday, November 15, 2002. Having fully considered the arguments of counsel, the Court finds that Plaintiff Commercial Roofing and Sheet Metal Co., Inc. ("Commercial") has failed to allege a cause of action for business conspiracy or tortious interference with prospective business relations against either Defendant. For the reasons stated below, the Court hereby sustains the Demurrer filed by Defendants Gardner and James and grants Plaintiff leave to amend its Motion for Judgment within twenty-one days of the date of this letter.

This case initially was filed on June 18, 2002. Plaintiff amended its Motion for Judgment on July 30, 2002, and Defendants Gardner Engineering and Jeff James filed their Demurrer on September 18, 2002. The Amended Motion for Judgment ("AMJ") alleges that the defendants conspired to injure

Plaintiff's business in violation of Virginia Code §§ 18.2-499 and 18.2-500. Count II of the AMJ alleges tortious interference with prospective contractual relations. Plaintiff's claims arise out of Defendants' alleged actions whereby Plaintiff was excluded from the bidding process for a waterproofing project for Skyline House Condominium Association ("Skyline").

## I. *Count I: Statutory Conspiracy*

Defendant James argues that Count I fails to state a claim against him for statutory conspiracy because, at the relevant times, he was acting within the scope of his employment by Gardner Engineering and, as a matter of law, they are legally incapable of conspiring with each other. Plaintiff does not allege that James ever committed any acts outside the scope of his employment. Both of these defendants argue that Plaintiff's mere "conclusory allegation" that the defendants conspired in violation of Va. Code § 18.2-499 is insufficient to state a claim. They state that the Plaintiff is required to "allege either that the defendants conspired to accomplish an unlawful purpose or that they conspired to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." Dem. at 2, citing *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 337 S.E.2d 744 (1985). Defendants argue that the AMJ does not allege an unlawful purpose or any unlawful conduct on their part.

Plaintiff's memorandum does not address the argument that its claims against James are precluded under the intra-corporate immunity doctrine. Plaintiff argues that it has stated a cause of action under Va. Code §§ 18.2-499 and 18.2-500 by alleging that two or more persons combined for the purpose of "willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever," thereby causing damage to the Plaintiff. Plaintiff claims that its "exclusion from the bidding process, despite its previous work for Skyline Association, demonstrates Defendants' ill-will and hatred toward the Plaintiff."

"By definition, a single entity cannot conspire with itself." *Fox v. Deese*, 234 Va. 412, 428, 362 S.E.2d 699 (1987). Thus, in the absence of an allegation that James was acting outside the scope of his employment with Gardner and in light of the AMJ's allegation that James "was employed by Gardner at all times relevant to this complaint," the Court sustains James's Demurrer to Count I and grants Plaintiff leave to amend the AMJ within twenty-one days.

Plaintiff has failed to state a claim against either Defendant under Code §§ 18.2-499 and 18.2-500 because the AMJ fails to "at least allege an unlawful act or an unlawful purpose." *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402 (1985). In *Hechler*, the plaintiff failed to allege unlawful conduct or purposes where it accused Defendants G.M.C. and a competing car dealership of conspiracy for telling customers that plaintiff would no longer be selling a certain type of automobile and for "enticing key employees away" and terminating plaintiff's franchise. Because it was legal for G.M.C. to terminate the franchise and for the competing dealership to "entice" at-will employees and to tell customers that plaintiff would no longer sell certain automobiles, which was true, plaintiff failed to state a claim under Code §§ 18.2-499 and 18.2-500. Here, Plaintiff alleges that the Defendants conspired with each other to exclude Plaintiff from bidding on a construction project. Defendant Gardner Engineering was asked to assemble a list of bidders and allegedly made Chavies agree that he would not use Plaintiff as a subcontractor as a condition precedent to allowing Chavies to bid. Plaintiff does not allege that they conspired for an unlawful purpose. Rather, Plaintiff asserts that having Chavies agree not to use Plaintiff as a subcontractor was an "unlawful means." Plaintiff does not cite any authority for the proposition that it is unlawful for an engineering firm hired to prepare a list of qualified contractors for a construction project to seek to exclude a subcontractor from the bidding. Thus, Plaintiffs having failed to allege either an unlawful purpose of the conspiracy or any unlawful actions by Defendants, the Court sustains the Defendants' Demurrer to Count I of the AMJ and grants Plaintiff leave to amend the AMJ as to Defendants Gardner and James within twenty-one days.

## II. Count II: Tortious Interference with Existing and Prospective Contractual Relations

I sustain the Demurrer to Count II on the ground that Plaintiff has failed to allege a reasonable expectation of further contractual relations with Skyline as well as on the ground that Plaintiff has failed to allege that the Defendants used "improper methods" of interference with any business relationship between Plaintiff and Skyline.

### A. Reasonable Expectation of Further Contractual Relations

Plaintiff acknowledges that the AMJ does not state a claim against the Defendants for tortious interference with an existing contract. Instead, the AMJ alleges that the Defendants tortiously interfered with Commercial's

reasonable expectancy that it would be allowed to bid on and win the contract at issue. Plaintiffs argue that the AMJ states a claim for tortious interference with a contract by showing:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

P's M. at 4, citing *Duggin v. Adams*, 234 Va. 221, 360 S.E.2d 832 (1987). Plaintiff argues that it "clearly ... maintained a business expectancy, namely, that it would be awarded waterproofing and roofing subcontracts for Skyline Association." Commercial argues that its expectation was reasonable based on the fact that it had successfully completed approximately 1.6 million dollars' worth of work for Skyline. Further, Plaintiff "had previously submitted an estimate for the Plaza Planter Waterproofing Project at the express request of Gusbey Silva, an agent of Skyline Association, and had been assured it would be invited to bid on the project." P's M. at 4. Thus, there was more than just a "possibility" that Plaintiff would be allowed to bid and would be awarded the project.

Defendants argue that the AMJ does not allege facts supporting the existence of any reasonable business expectancy on Plaintiff's part. Plaintiff "must assert more than a 'belief and hope that a business relationship will continue'." Dem. at 2, citing *Commercial Business Systems, Inc. v. Halifax Corp.*, 253 Va. 292, 301, 484 S.E.2d 892 (1997). They argue that, in the context of a competitive bidding process for a commercial construction project, a reasonable expectation of being allowed to bid is not a reasonable expectation of further economic benefit because an opportunity to bid does not guarantee that one will secure the contract.

Paragraph 11 of the AMJ states that "Defendants James, Gardner, and Chavies had actual knowledge that there existed a business relationship between Commercial Roofing and Skyline Association, based on which Commercial Roofing expected to bid on and possibly be awarded all contracts for roofing and/or waterproofing services." I find that Plaintiff's expectation that it would be allowed to bid on a project does not rise to the level of a reasonable expectation of further contractual relations, even in the face of Plaintiff's prior work for Skyline.

B. *"Improper Methods" of Interference*

Defendants argue that the AMJ fails to allege adequately the "improper means" used tortiously to interfere with Commercial's business expectancy. Plaintiff's only argument on this point is that "it seems abundantly clear that Al Chavies' acceptance of the subcontract with the conditional provision that Commercial Roofing be explicitly excluded from the bidding process constitutes 'improper means'." P's M. at 5.

The Court finds that Plaintiff has failed to allege that the Defendants used "improper means" to interfere with its expectancy of being allowed to bid on and procure the contract for the project at issue. In the case of *Duggin v. Adams*, 234 Va. 221 (1987), the Supreme Court of Virginia discussed the distinction between the requirements for stating a cause of action for tortious interference with a contract that is not terminable at will and one that is terminable at will as follows:

> The requisite elements for a prima facie showing of a tortious interference with a contract that is not terminable at will are: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." ...
>
> Unlike a party to a contract with a definite term, however, an individual's interest in a contract terminable at will is essentially only an expectancy of future economic gain, and he has no legal assurance that he will realize the expected gain. Thus, the cause of action for interference with contractual rights provides no protection from the mere intentional interference with a contract terminable at will. In short, the extent of permissible third-party interference increases as the degree of enforceability of a business relationship decreases....
>
> Consequently, when a contract is terminable at will, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed "improper methods."

*Id.* at 226-27 (internal citations omitted). The Court also cited many examples of conduct that would constitute "improper methods" of interference with a contract terminable at will:

> Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules. Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship....
>
> Methods also may be improper because they violate an established standard of a trade or profession or involve unethical conduct. Sharp dealing, overreaching, or unfair competition may also constitute improper methods.

*Id.* at 227-28 (internal citations omitted).

In this case, Plaintiff has alleged even less than a contract terminable at will. It has pleaded, at best, an expectancy of future economic gain from business relations with Skyline. The alleged "improper means" of interference, according to Plaintiff's memorandum, is that "it seems abundantly clear that Al Chavies' acceptance of the subcontract with the conditional provision that Commercial Roofing be explicitly excluded from the bidding process constitutes 'improper means'." P's M. at 5. Plaintiff has not pleaded that any of the Defendants committed any independent torts, such as fraud or defamation, nor has it pleaded that Defendants used deceit or otherwise acted unethically. The AMJ states that Defendants employed "acts of sharp dealing, overreaching, and/or unfair competition" but the only factual allegations that could support that conclusory statement are that the three defendants "acted in combination to disparage and have Commercial Roofing improperly excluded from the final bidding process on the Plaza Planter project." Plaintiff has not pleaded any facts or argued any law tending to show that it is improper for an engineering firm, hired by a client to compile a list of contractors to be invited to bid on a project, to fail to include a contractor in the list or to condition acceptance of a bid on a contractor's agreement to use or not use certain subcontractors. Thus, the Court sustains the Demurrer to Count II and grants Plaintiff leave to amend within twenty-one days.

*Order*

This matter came before the Court on November 15, 2002, for argument on the Demurrer of Defendants Gardner Engineering, Inc., and Jeff James. For the reasons stated in the letter opinion dated November 20, 2002, it is hereby ordered that the Demurrer of Defendants Gardner Engineering, Inc., and Jeff James is sustained. Plaintiff shall have twenty-one days from the date of this Order to file a Second Amended Motion for Judgment or this case will stand dismissed as to the first and second defendants.