COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Malveaux and Raphael
Argued at Richmond, Virginia


BROOKS & CO. GENERAL CONTRACTORS, INC.
                                                           MEMORANDUM OPINION* BY
v.        Record No. 1989-23-2                      JUDGE MARY GRACE O'BRIEN
                                                              FEBRUARY 11, 2025
SCHOOL BOARD OF CHESTERFIELD COUNTY


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

Bradley P. Marrs (Marrs & Henry, on briefs), for appellant.

Meredith E. Carpenter, Senior Assistant County Attorney (Jeffrey
Lee Mincks, County Attorney, on brief), for appellee.


This appeal arises from the dismissal of a contract action that Brooks & Co. General

Contractors, Inc. ("Brooks") brought against the School Board of Chesterfield County ("School

Board").  Brooks alleged that the School Board breached two contracts by not compensating Brooks

for costs to rent temporary freezer and cooler units during construction project delays.  The court

sustained the School Board's demurrer without leave to amend, finding that the contracts expressly

obliged Brooks to pay these costs.  On appeal, Brooks argues the court erred in sustaining the

demurrer and denying leave to amend.  For the following reasons, we affirm.

BACKGROUND

In 2021, the School Board needed to install a new food freezer at J.G. Hening Elementary

School and replace a food cooler/freezer at Bailey Bridge Middle School.  To obtain contractors for

this work, the School Board issued invitations for bids (IFBs).  The IFBs set due dates for

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

contractors to submit bids and for the School Board to open the submissions: May 5, 2021 was the due date for the Hening bids, and May 6, 2021 was the due date for the Bailey Bridge bids. The IFBs provided that "[a]ll bids submitted shall be binding for sixty (60) calendar days following bid opening date."

Brooks submitted bids and was awarded both contracts, which the parties executed on May 12, 2021. Each contract consisted of several "Contract Documents" enumerated in Article 9 of the parties' core agreement. The Contract Documents included instructions to bidders and amendments thereto; a bid form; and the IFB with multiple "Addenda." Article 9 also contained carve-out language excluding documents from the contract. It stated that "[p]ortions of Addenda relating to bidding or proposal requirements are not part of the Contract Documents unless the bidding or proposal requirements are also enumerated in Article 9." The end of Article 9 reserved a space for listing "any additional documents that are intended to form part of the Contract Documents" and reiterated that "portions of Addenda relating to bidding or proposal requirements, and other information furnished by the Owner in anticipation of receiving bids or proposals, are not part of the Contract Documents unless enumerated in this Agreement." The parties did not list additional documents for either contract and left this portion of Article 9 blank.

Both contracts required Brooks to substantially complete the work 90 days after the School Board issued a notice to proceed. This 90-day period was set forth in the parties' core agreement, and in two other Article 9 Contract Documents: the bidding-instruction amendments and the bid form. These provisions did not specify a date for the School Board to issue a notice to proceed, only that the work was to be substantially completed 90 days later.

Brooks, however, argues that both contracts "stipulated" that the School Board would provide notices to proceed for each project in "mid-May" 2021. To support this argument, Brooks relies on minutes from a "non-mandatory [p]re-[b]id conference" at which the School Board's

- 2 -

architect addressed the construction schedule. According to the meeting minutes, the architect said that he "anticipated that the Notice to Proceed [would be] issued in mid-May." The minutes provided as follows:

> Architect notes that Substantial Completion of the project shall occur no more than ninety (90) days following Notice to Proceed, with Substantial Completion by August 16, and Final Completion by September 16. It is *anticipated that the Notice to Proceed will be issued in mid-May*, which will begin the 90[-]day Contract period. Full, unencumbered access to the project site will be available to the Contractor on the first day following the end of the school year for students, currently scheduled to be June 18, 2021. All on-site construction work shall occur between June 19, 2021 and August 16, 2021. The Contractor shall have limited access to the site prior to June 18 for the purpose of on-site verification of existing conditions only.

(Emphasis added).[1]

The meeting minutes were identified in and attached to one of the Contract Documents—specifically, Addendum 1 to each project's IFB. Article 9 identified Addendum 1 as having six pages, a page range that included the minutes. Article 9, did not, however, specifically refer to the meeting minutes or list them in the space reserved for additional Contract Documents. Furthermore, whereas Addendum 1 specifically explained when it modified contractual terms, the provision referencing the meeting minutes merely stated: "The minutes of the non-mandatory [p]re-[b]id conference [are] attached hereto."

The contracts expressly required Brooks to activate the new freezer/cooler units[2] at each school by July 30, 2021, and to provide temporary freezer/cooler units at Brooks's sole expense if unable to meet that deadline. Specifically, Addendum 1 provided as follows:

---

[1] The minutes were the same for each project, except that the Hening minutes added the phrase "following the May School Board meeting" after "[i]t is anticipated that the Notice to Proceed will be issued in mid-May."

[2] We use "freezer/cooler units" when referring collectively to the freezer/cooler unit for Bailey Bridge and the freezer unit for Hening.

a. [The School Board] will empty the existing [freezer/cooler] unit of all food and turn it off at the end of the last day of school (June 18, 2021). . . .  The [School Board's] staff will re-occupy the kitchen on Monday, August 02, 2021.  On this date, the [School Board's staff] will begin stocking the [k]itchen and the new [freezer/cooler] unit for use.  Therefore, the new [freezer/cooler] *shall be activated no later than Friday, July 30, 2021,* so the unit will be conditioned the following Monday.

b. *If the new* [*freezer/cooler*] *unit is not activated by July 30, 2021,* [*Brooks*] *shall at no additional cost to the* [*School Board*]*, provide temporary* [*freezer/cooler*] *units of the type and quantity specified in the Project Manual . . . .*

(Emphases added).

Brooks did not activate the new freezer/cooler units by July 30, 2021.  Instead, Brooks activated the new unit at Hening on October 22 and the new unit at Bailey Bridge on November 16.

Brooks submitted change orders to the School Board seeking reimbursement for delay-related costs.  Included in this submission was $4,541.22 for renting units for the Hening project and $13,612.95 for the Bailey Bridge project.  These requests reflected only a portion of the total rental costs Brooks incurred.  According to Brooks, it deducted from each total rental figure the "amounts [that] it had expected to incur, per the prescribed project schedule" and "sought only the rental expenses to the extent they were increased by virtue of the [School] Board's delays."

The School Board did not reimburse Brooks for its rental costs, reasoning that those costs were the sole responsibility of Brooks under the express terms of the contracts.  But the School Board did agree to reimburse Brooks for demobilization, site monitoring, and remobilization resulting from delays.

Brooks sued the School Board for breach of contract, seeking to recover its claimed rental costs.  Brooks alleged that the contracts required the School Board to issue a "notice to proceed" for each project by "mid-May" 2021.  According to the complaint, the mid-May notices to proceed would have allowed Brooks to begin work on each project by June 19 and substantially complete

- 4 -

performance by August 16—a timeline appearing in the pre-bid meeting minutes. The School Board, however, "[f]or reasons solely within [its] responsibility" did "not actually approve" the contracts "nor issue any notice to proceed . . . until June 3, 2021." Brooks alleged that this delay made its vendor unable to deliver the new freezer/cooler units within the schedule contemplated by the contracts. The delay required Brooks to furnish temporary freezer/cooler units for a "time not contemplated by the original contract[s]."

Brooks alleged that it timely submitted its claim for all delay expenses, which included charges for providing the temporary freezer/cooler units. It also alleged that the project architect "approved and certified all of Brooks's delay-related claims," including the rental charges. However, the School Board "refused to pay Brooks's claim seeking compensation for the additional temporary [freezer/cooler] rental charges that were caused by the [School Board's] delay at the outset." The court granted the School Board's motions craving oyer and allowed into the record the documents forming the basis of Brooks's contract action.

The School Board demurred, arguing that Brooks failed to state a claim for breach of contract. Following a hearing, Brooks submitted a letter memorandum arguing *inter alia* that the School Board's execution of change orders reflected a concession of responsibility for delay damages.

The court sustained the demurrer, finding that "[n]o contract term obligates [the] School Board to issue a Notice to Proceed 'in mid-May'" and that the contracts "assign[] rental unit costs entirely to Brooks." The court entered an order dismissing the complaint with prejudice, without leave to amend.

ANALYSIS

I. <u>Whether Court Erred in Sustaining Demurrer (Assignments of Error 1 and 2)</u>

Brooks argues the court erred in sustaining the School Board's demurrer. It contends the court "misapplied the contract documents" and ignored arguments Brooks presented at the hearing and in its post-hearing letter memorandum.

An appellate court "reviews the sustaining of a demurrer de novo." *Padula-Wilson v. Landry*, 298 Va. 565, 574 (2020). "[W]e accept as true all properly pled facts and all inferences fairly drawn from those facts." *Id.* (quoting *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 204 (2007)). "[W]e address the same issue that the circuit court addressed: whether the facts alleged in a complaint are legally sufficient to state a cause of action upon which the requested relief may be granted." *Ramos v. Wells Fargo Bank, N.A.*, 289 Va. 321, 322 (2015). However, "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382 (1997). "Interpretation of a contract is a question of law that is reviewed de novo." *Palmer & Palmer Co. v. Waterfront Marine Constr., Inc.*, 276 Va. 285, 289 (2008).

On de novo review, we find no error in the court's contract interpretation and decision to sustain the demurrer. To state a claim for breach of contract, Brooks was required to allege: (1) "a legally enforceable obligation of a defendant to a plaintiff"; (2) "the defendant's violation or breach of that obligation"; and (3) "injury or damage to the plaintiff caused by the breach of obligation." *Ramos*, 289 Va. at 323 (quoting *Filak v. George*, 267 Va. 612, 619 (2004)).

Brooks alleged that, because the School Board delayed the project, Brooks incurred "rental charges . . . for the time not contemplated by the original contract[s]." However, no contract provision required the School Board to pay costs of renting the temporary freezer/cooler

units, even if the School Board caused a delay.  Instead, both contracts expressly stated that Brooks was responsible for freezer/cooler rental costs.  Addendum 1, which was expressly enumerated as a contract document in Article 9 of the parties' core agreement, stated that the new freezer/cooler units "shall be activated no later than Friday, July 30, 2021" and if the new units were "not activated by July 30, 2021, [Brooks] shall at no additional cost to the [School Board], provide temporary [freezer/cooler] units of the type and quantity specified in the Project Manual."  Therefore, by the express terms of the contracts, all rental costs were solely the responsibility of Brooks, regardless of any delay.

Additionally, neither contract established a date by which the School Board was contractually obligated to issue a notice to proceed.  Although the complaint alleged that the contracts "stipulated that the [School] Board would issue Brooks with a notice to proceed by mid-May, 2021," the documents do not support this allegation.  First, the minutes from the non-mandatory pre-bid conference, on which Brooks relies, were not Contract Documents under Article 9 of the parties' core agreement.  They were merely attached to Addendum 1.  Although Addendum 1 was a Contract Document, Article 9 excluded the minutes.  Article 9 provided that "[p]ortions of Addenda relating to bidding or proposal requirements are not part of the Contract Documents unless the bidding or proposal requirements are also enumerated in this Article 9."  Similar carve-out language appeared at the end of Article 9, where the parties could "[l]ist . . . any additional documents that are intended to form part of the Contract Documents."  There, Article 9 provided that "portions of Addenda relating to bidding or proposal requirements, *and other information furnished by the Owner in anticipation of receiving bids or proposals*, are not part of the Contract Documents unless enumerated in this Agreement."  (Emphasis added).  The minutes constituted a mere "portion" of Addendum 1 relating to bidding or proposal requirements, and they conveyed information from the School Board in anticipation of receiving bids.  Because the minutes

- 7 -

themselves were not specifically enumerated in the Agreement,[3] the carve-out provision of Article 9 applied, and the minutes were "not part of the Contract Documents."

Moreover, even assuming the minutes were Contract Documents, they do not reflect a "stipulation" that the School Board would issue a notice to proceed by mid-May 2021. In fact, the minutes contradict this allegation, noting merely that the School Board "anticipated" issuing the notices in "mid-May." An expression of anticipation does not create a legally binding obligation. This is especially true when, as here, the anticipated time for performance ("mid-May") is itself "too vague and indefinite to be enforced." *Allen v. Aetna Casualty & Surety Co.*, 222 Va. 361, 364 (1981). The reference to "[s]ubstantial [c]ompletion by August 16, 2021" in those same meeting minutes did not make the "anticipated" notice-to-proceed date of mid-May legally binding on the School Board; it simply corresponded to the projected timeline that the architect presented to potential bidders at the conference.

The meeting minutes did not bind the School Board to issue the notices to proceed by any date certain. They summarized information given to potential bidders, and this information included merely an estimate for when the notices to proceed might be issued. The meeting minutes did nothing to modify the Contract Documents—which repeatedly stated that the contractor had to achieve substantial completion 90 days after receiving the notice to proceed, but never specified the notice-to-proceed date itself.[4]

---

[3] The fact that Article 9 lists Addendum 1 as having six pages—a page range that includes the minutes—makes no difference and cannot satisfy the enumeration requirement of Article 9. By leaving space for parties to list additional Contract Documents, Article 9 clearly contemplates express enumeration and not enumeration implied by page ranges.

[4] We note that the meeting minutes repeat the Addendum 1 requirement for Brooks to activate the new units by July 30, 2021 or else bear sole financial responsibility for renting temporary units. Brooks cannot pick and choose which aspects of the meeting minutes it considers binding.

In short, no contract provision obligated the School Board to issue notices to proceed by mid-May. Therefore, Brooks cannot state a claim for breach of contract premised on allegations that the School Board issued the notices on June 3, 2021 rather than "mid-May."

The propriety of issuing notices on June 3, 2021 is supported by the Contract Documents. Both contracts provided that Brooks's bids were binding for 60 days. Specifically, this information was in the IFBs, which are among the Contract Documents enumerated in Article 9 of the parties' core agreement. The IFBs provided that "[a]ll bids submitted shall be binding for sixty (60) calendar days following bid opening date." The bid opening dates for the Hening and Bailey Bridge projects were, respectively, May 5, 2021 and May 6, 2021. The School Board could have accepted Brooks's bids and issued notices to proceed at any time up to, respectively, July 4, 2021 and July 5, 2021. Accordingly, issuing the notices to proceed on June 3, 2021 was within the School Board's contractual rights. Brooks is presumed to have known and assented to those terms. *See Mueller v. Commonwealth*, 15 Va. App. 649, 654 (1993) ("[O]ne who accepts a written agreement or contract is presumed to know and assent to its contents.").

Brooks alleged that the School Board's execution of change orders to both contracts constituted a concession that the School Board caused a delay obligating it to pay temporary freezer/cooler rental costs. This allegation was contradicted by the Contract Documents and change orders considered by the court on demurrer. *See Ward's Equip., Inc.*, 254 Va. at 382 (recognizing that documents subject to a granted motion craving oyer can be considered as part of the pleadings and "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings"). Although the School Board reimbursed Brooks for some delay-related expenses, the change orders do nothing to alter the language in Addendum 1 assigning Brooks full responsibility for temporary freezer/cooler units. In fact, in executing the change orders, the School Board refused to reimburse

Brooks for the claimed rental costs, reflecting the School Board's ongoing belief that Addendum 1 was valid and enforceable.

No contract term obligated the School Board to issue notices to proceed in mid-May 2021, and the contracts assigned costs for renting temporary cooler/freezer units entirely to Brooks. The contracts thus preclude Brooks from recovering its rental costs from the School Board. Accordingly, the complaint failed to state a claim for breach of contract.

## II. Whether Court Erred in Denying Leave to Amend (Assignment of Error 3)

Brooks argues the court abused its discretion by dismissing the complaint without leave to amend. Brooks asserts it should have been granted the opportunity to plead with more particularity (1) that the School Board had a contractual obligation to issue the notices to proceed by mid-May; or (2) "any other point" on which the original complaint was deficient. In response, the School Board argues that an amended complaint would be "legally futile" because the contracts expressly provided that Brooks—not the School Board—was responsible for the cost of renting temporary freezer/cooler units if the permanent units were not ready by July 30, 2021.

Leave to amend "should be liberally granted." Rule 1:8; *see AGCS Marine Ins. Co. v. Arlington Cnty.*, 293 Va. 469, 486-87 (2017). However, amended pleadings should not be allowed when such amendment would be futile. *AGCS Marine Ins. Co.*, 293 Va. at 486; *see Hechler Chevrolet, Inc. v. Gen. Motors*, 230 Va. 396, 403 (1985). We review the decision to grant or deny leave to amend for abuse of discretion. *Hechler Chevrolet, Inc.*, 230 Va. at 403 ("The trial court . . . retains discretion to deny a motion for leave to amend when it is apparent that such an amendment would accomplish nothing more than provide opportunity for re[-]argument of the question already decided."); *see also AGCS Marine Ins. Co.*, 293 Va. at 486.

The court did not abuse its discretion because any amendment would be legally futile. The contracts expressly assigned Brooks sole responsibility for renting temporary freezer/cooler units if the permanent units were not ready by July 30, 2021. Nothing more particularized about Brooks's allegations can overcome this contractual barrier to the reimbursement sought. Nor could further or more particularized allegations re-write the contracts and obligate the School Board to have issued notices to proceed by mid-May. Brooks cannot plausibly rise above the language—buried within meeting minutes at a non-mandatory pre-bid conference—that mid-May was merely an "anticipated" date for issuing the notices to proceed, not an obligatory date. Regardless of whether the meeting minutes are among the Contract Documents enumerated in Article 9, they did not create a legally enforceable obligation to issue notices to proceed by mid-May.

Brooks contends that it should have been granted the opportunity to amplify allegations concerning the change orders. The original complaint made only a passing reference to the change orders, alleging that Brooks submitted claims for "all delay expenses incurred and other compensation due from the [School] Board to Brooks," including a "portion of the rental charges incurred for the time not contemplated" by the original contracts. On appeal, Brooks suggests it would elaborate on this allegation by adding that the "agreed change orders constitute a contractual admission by the Board of its original obligation, its breach by delay, and its responsibility for payment of proper delay-induced expenses." Brooks did, however, present this elaboration to the circuit court in its post-hearing letter memorandum, which the court considered in reaching its decision. An amended complaint reiterating these points would not cure the shortcomings of the original complaint and therefore be legally futile. *See Hechler Chevrolet, Inc.*, 230 Va. at 403.

Brooks contends it could have more particularly alleged that certain delay-induced rental charges were contemplated by the parties at contracting and that Brooks is entitled to rental costs in excess of that contemplated amount. Again, however, these allegations would be legally futile

considering that the contract language expressly assigned responsibility for rental costs entirely to Brooks.

Finally, Brooks argues that leave to amend should have been granted to challenge the July 30, 2021 deadline to activate the new freezer/cooler units at each school. An amended complaint could have alleged that this deadline could not possibly be binding if the School Board had no contractual obligation to issue notices to proceed by a certain date. However, the record reflects that the bids were only binding until July 4 and July 5, and therefore the School Board had only until July 4 and July 5 to issue notices to proceed. Instead, the School Board issued notices on June 3, which was within the parameters of the contracts—specifically, within the parameters of the IFBs providing that bids were binding for 60 calendar days following bid opening dates of May 5 and 6. Additionally, as the School Board argued at the hearing, even if it had waited until July 4 and July 5 to issue the notices, giving Brooks less than a month to install the new units before the July 30 deadline, Brooks would still be responsible for any rental costs if it missed that deadline. Brooks was aware of the July 30 deadline, and the potentially tight construction schedule, when it submitted its bids and ultimately entered into the contracts. By signing the contracts, Brooks knowingly assumed full financial responsibility for renting temporary freezer/cooler units if it did not meet the July 30 deadline.

Because an amended complaint would have been legally futile, the court did not abuse its discretion in denying leave to amend.

## CONCLUSION

The circuit court did not err in sustaining the School Board's demurrer and dismissing Brooks's complaint without leave to amend. We therefore affirm the judgment below.

*Affirmed.*