# COURT OF APPEALS OF VIRGINIA

Present:    Judges Malveaux, Fulton and White
Argued by videoconference

STEVEN BEST

v.        Record No. 0949-22-4

M. JAY FARR, CHIEF OF POLICE AND
  ARLINGTON COUNTY POLICE OFFICERS
  STEPHEN CLARK, RYAN REESE, CHRISTOPHER
  MCCLAUGHERTY, ALEXANDER VARAKLIS,
  JENNA BARTHOLOMEW AND JOHN DOE OFFICERS

                                            MEMORANDUM OPINION[*] BY
JESSICA LARY                           JUDGE JUNIUS P. FULTON, III
                                                APRIL 18, 2023

v.        Record No. 0952-22-4

M. JAY FARR, CHIEF OF POLICE AND
  ARLINGTON COUNTY POLICE OFFICERS
  STEPHEN CLARK, RYAN REESE, CHRISTOPHER
  MCCLAUGHERTY, ALEXANDER VARAKLIS,
  JENNA BARTHOLOMEW, K9 CPL. RUSSO AND
  JOHN DOE OFFICERS

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

Benjamin J. Trichilo (Harvey J. Volzer; McCandlish & Lillard Law,
P.C.; Shaughnessy & Volzer, P.C., on briefs), for appellants.

Ryan Samuel, Deputy County Attorney (Arlington County
Attorney's Office, on brief), for appellees.

These two related cases arise out of an attempt by an Arlington County police tactical

unit to stop a vehicle and detain its occupants for suspected criminal activity. However, their

efforts were resisted and violence ensued, resulting in serious injuries to the driver, Steven Best,

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

and the passenger, Jessica Lary. Best and Lary filed separate—though nearly identical—civil complaints[1] against M. Jay Farr, Chief of Police of Arlington County, as well as Officers Stephen Clark, Ryan Reese, Christopher McClaugherty, Alexander Varaklis, Jenna Bartholomew, Cpl. Russo, and John Doe Officers ("appellees"). The complaint alleged that appellees were jointly and severally liable for gross negligence (Count I), willful, wanton, and reckless negligence (Count II), battery (Count III), and separately that Chief Farr was liable for grossly negligent supervision of the police operation carried out by his officers (Count IV). Chief Farr filed a demurrer to count four, and Officers Clark, Reese, McClaugherty, Varaklis, and Bartholomew filed a demurrer to counts one through three, which Chief Farr joined in. The trial court ultimately sustained both demurrers without leave to amend. Further, the trial court entered an order dismissing any and all claims against Clark as a discovery sanction. Finally, Lary suffered a nonsuit related to her remaining claims against Officer Russo. Presenting eight joint assignments of error and a ninth and tenth assignment of error unique to each, Best and Lary appeal the judgment of the trial court sustaining the demurrers. For the reasons stated herein, we affirm the judgment of the trial court.

## BACKGROUND[2]

### I. Facts

On May 3, 2018, at approximately 6:00 p.m., Best and Lary left Best's residence in Arlington in Best's work van. Chief Farr authorized the surveillance of Best's van, while

---

[1] As both parties refer to the separate complaints as one single complaint, we will do the same for the sake of clarity.

[2] "Because this appeal arises from the grant of a demurrer, we accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018). A plaintiff may rely upon the inferences fairly deducible from those facts, but only "to the extent that they are *reasonable*." *Id.* at 358.

occupied by Best and Lary. Lary had an outstanding warrant for her arrest, and she had made arrangements with Alexandria City authorities to turn herself in to the city jail the next day. A team of Arlington police officers acting under Chief Farr's direction and control—including those named in the lawsuit—observed a hand-to-hand transaction between Best and another individual that they suspected involved illegal drugs. Best eventually parked his van on the side of a public street, near an intersection. Appellees attempted to detain Best and Lary using a tactical unit involving multiple unmarked vehicles, manned by at least five armed, plainclothes officers. Three of the unmarked vehicles were instructed to "box in" Best's van while it was parked on the public street.

Officer McClaugherty pulled his unmarked vehicle in behind Best's van, while Officer Reese and another unidentified officer pulled their unmarked vehicles directly in front of Best's van, thereby restricting its movement. One of the vehicles in front of Best's van, a truck, began flashing blue grill lights. Four of the officers, armed but not in uniform, approached the van. One of the officers began tugging on the driver's (Best's) window. No badges were displayed, nor was either Best or Lary told that they were under arrest. However, while the officer was pulling on the driver's side window, he yelled to Best, "show me your hands!" Best alleges that he "panicked and tried to escape, first pulling forward and striking Officer Reese's vehicle, and then backing [up] and striking McClaugherty's vehicle, and pushing it backwards, allowing the van to escape." One of the officers was directly in front of the van as it accelerated out of the mayhem. This officer, along with several of the other officers present, fired multiple gunshots at the van, striking Best five times and Lary once. Best was able to drive a short distance but was unable to continue driving due to his severe gunshot wounds. After Best's van came to a stop, he told Lary to flee in order to protect herself. Lary ran from the van and hid in a shrub in the adjoining residential neighborhood. Thereafter, Lary was found by a police dog, which, upon

locating her, proceeded to bite her.  Both Best and Lary were arrested and taken to the hospital.

Best fainted at some point during the ordeal.  He awoke in the hospital, having been treated for

five gunshot wounds, as well as another wound, purportedly a knife wound, which he attributes

to the appellees, stating that one of them "likely" inflicted the wound on him while he was

unconscious.

## II.  Procedural History

The initial complaint filed by Best and Lary alleged five counts: the four stated above, as

well as a separate gross negligence claim asserted against Chief Farr.  Officer Russo was not

named as a defendant in the initial complaint.  Thereafter, Chief Farr demurred.  The rest of the

officers ("officer appellees") filed a separate demurrer or, in the alternative, motion for a bill of

particulars, in which Chief Farr joined.  On August 10, 2020, Best and Lary moved for all four

Arlington Circuit Court judges to recuse themselves, based on Judge Fiore's acceptance of Best's

*North Carolina v. Alford*, 400 U.S. 25 (1970), plea agreement in the criminal case related to the

incident giving rise to this case.  Chief Judge Newman denied that motion to recuse and assigned

the cases to Judge Fiore.  Best and Lary later filed motions specifically seeking Judge Fiore's

recusal, arguing that he had personal knowledge of disputed facts.  Judge Fiore declined to

recuse himself, sustained Chief Farr's demurrer without prejudice, and granted officer appellees'

motion for a bill of particulars.  Judge Fiore further directed Best and Lary that the bills of

particulars were to be individualized as to each defendant.  Best and Lary filed an amended

complaint and bills of particulars; however, the trial court determined that the bills of particulars

were not individualized as to each defendant.

The trial court deferred ruling on the demurrers to allow Best and Lary to provide more

individualized assertions as to each officer.  In a series of hearings starting in March of 2021, the

trial court considered arguments that the complaint failed to allege proper claims for negligence

or battery and that the bills of particulars filed by Best and Lary failed to assert individualized allegations against each officer. The trial court continued to defer ruling on the demurrers but on more than one occasion ordered Best and Lary to re-file individualized bills of particulars. Thereafter, several different pleadings were filed by each side, culminating in Best and Lary eventually filing individualized bills of particulars for each officer. In total, three hearings were held between March and December of 2021 addressing the adequacy of the factual allegations, and the trial court allowed Best and Lary to file three separate rounds of bills of particulars.

The trial court ultimately granted Best and Lary's motion to amend their complaint on July 8, 2021, and Best and Lary filed their amended complaint on July 9, 2021. The amended complaint asserted only the first four counts noted, supra. In addition to the amended complaint, Best and Lary attached to the complaint a CD which contained a video which captured, in part, the incident referenced by the complaint.

On December 2, 2021, the trial court dismissed Best's claims against Officer Clark as a discovery sanction. The trial court issued a memorandum opinion on December 27, 2021, sustaining appellees' demurrers without leave to amend, and dismissing all claims asserted by Best and Lary against all defendants, save for Lary's claims against Officer Russo, who did not join in the demurrer as he had only recently been named as a defendant to the case. By final order dated January 28, 2022, the trial court entered orders incorporating the rulings outlined in the December 27, 2021 letter opinion, thereby dismissing all claims, except those filed by Lary against defendant Russo, with prejudice. Lary thereafter suffered a voluntary non-suit of her claims against Officer Russo. This appeal followed.

### III. Best and Lary's Assignments of Error

Best and Lary jointly assert eight assignments of error, as follows:

A. The Court erroneously found, as a matter of law, that the Amended Complaint did not contain sufficient allegation to state the causes of action plead against all defendants (negligence, gross negligence, willful and wanton negligence, and battery); and that all claims should be dismissed without leave to amend.

B. The Court erroneously found that there was probable cause for an arrest, or reasonable grounds for a traffic stop.

C. The Court erroneously found that the defendants were in personal danger when they fired multiple times into Best's vehicle.

D. The Court erroneously found that there was no special duty owed by defendants, where the defendants attempted to unlawfully arrest Best and Lary, who were not engaged in any unlawful conduct.

E. The Court erroneously found that Best posed an immediate danger of serious harm or death to any police officer.

F. The Court erroneously found, as a matter of law, that the injuries to Best and Lary resulted from an intervening cause.

G. The Court abused its discretion by dismissing all claims with prejudice without leave to amend, where only one Demurrer had been filed.

H. Judge Fiore abused his discretion when he declined to recuse himself pursuant to Canon 3E(1)(a) of the Canons of Judicial Conduct because he had knowledge of disputed evidentiary facts.

Best individually assigns error as follows:

[I]. The Court abused its discretion by entering a final order on December 2, 2021, dismissing Stephen Clark as a discovery sanction; and also because this is a multi-party case and the required findings under Rule 1:2 were not and could not be made.

Lary individually assigns error as follows:

[J]. The Court erroneously found, as a matter of law, that Lary's allegations of being shot and subjected to an unjustified attack by a police dog did not state a cause of action against the defendants.

- 6 -

ANALYSIS

*I. Standard of Review*

These two cases come to us on appeal from the grant of appellees' demurrers, as well as the trial court's dismissal of any and all claims against Clark as a discovery sanction. We review the trial court's ruling on a demurrer de novo. *Schilling v. Schilling*, 280 Va. 146, 148 (2010). "Because this appeal arises from the grant of a demurrer, we accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018). "To survive a challenge by demurrer, however, factual allegations must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 613 (2019) (cleaned up). "Two important limitations on this principle" exist, however. *Coward*, 295 Va. at 358. "First, while we also accept as true unstated inferences to the extent that they are *reasonable*, we give them no weight to the extent that they are *unreasonable*." *Id.* at 358-59 (citing *Coutlakis v. CSX Transp., Inc.*, 293 Va. 212, 215 (2017)). "The difference between the two turns on whether the inferences are strained, forced, or contrary to reason, and thus properly disregarded as arbitrary inferences." *Id.* at 359 (citations omitted) (cleaned up). "Second, we must distinguish allegations of historical fact from conclusions of law. We assume the former to be true *arguendo*, but we assume nothing about the correctness of the latter because 'we do not accept the veracity of conclusions of law camouflaged as factual allegations or inferences.'" *Id.* (quoting *AGCS Marine Ins. v. Arlington Cnty.*, 293 Va. 469, 473 (2017)). "Instead, we review all conclusions of law de novo." *Id.* (quoting *AGCS Marine Ins.*, 293 Va. at 473). Virginia follows a notice pleading standard and "a pleading must state the essential facts and legal claims to notify the defendant of the nature of the case." *Townes v. Va. State Bd. of Elections*, 299 Va. 34, 51-52 (2020) (citing *City of Norfolk v. Vaden*, 237 Va. 40, 44

- 7 -

(1989)).  Even if a complaint is imperfect, if it is drafted so that a defendant cannot mistake the true nature of the claim, the court should overrule the demurrer.  *Catercorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993).

Further, a plaintiff may incorporate a video or document as part of the pleadings in his or her case.  This Court considers factual assertions in documents or videos attached to and incorporated into the complaint—or incorporated in response to a motion craving oyer—as those documents or videos may be used to amplify the facts alleged in a complaint when a court decides whether to sustain or overrule a demurrer.  *See Hale v. Town of Warrenton*, 293 Va. 366, 366 (2017).  However, "when documentary evidence 'blatantly contradict[s]' a plaintiff's account 'so that no reasonable jury could believe it,' a court should not credit the plaintiff's version."  *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276-77 (4th Cir. 2011) (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

Best and Lary also assert that the trial court abused its discretion in three different respects.  An abuse of discretion can occur in three ways:

> [1] when a relevant factor that should have been given significant weight is not considered; [2] when an irrelevant or improper factor is considered and given significant weight; and [3] when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011) (citing *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)).

## II.  Lawfulness of the Stop

Best and Lary's assignment of error pertaining to the existence of probable cause or reasonable grounds for a traffic stop informs our analysis of the battery claim asserted, as well as the claims sounding in negligence, as Best and Lary's theory of battery and of gross negligence both rely, in part, on the notion that the initial stop was unlawful and that officer appellees'

subsequent conduct was therefore also unlawful and tortious. Best and Lary assert that the trial

court erred in finding that there was probable cause or reasonable suspicion for officer appellees

to arrest Best and Lary. For clarity's sake, we initially note that the trial court determined that

*reasonable suspicion* of criminal activity justified the stop conducted by officer appellees.[3]

Here, the facts alleged and the video incorporated into the pleadings plainly support the

trial court's finding that the stop was supported by reasonable articulable suspicion and was

therefore lawful. The existence of reasonable suspicion in a particular case "involve[s] questions

of both law and fact." *Lawson v. Commonwealth*, 55 Va. App. 549, 554 (2010) (quoting *McGee

v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). "[W]e are bound by the trial court's

findings of historical fact unless 'plainly wrong' or without evidence to support them and we

give due weight to the inferences drawn from these facts by resident judges and local law

enforcement officers." *Byrd v. Commonwealth*, 50 Va. App. 542, 551 (2007) (quoting *McGee*,

25 Va. App. at 198). "While we are bound to review *de novo* the ultimate questions of

reasonable suspicion and probable cause, we 'review findings of historical fact only for clear

error and . . . give due weight to inferences drawn from those facts by resident judges and local

law enforcement officers.'" *Long v. Commonwealth*, 72 Va. App. 700, 712 (2021) (footnote

omitted) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

Despite Best and Lary's characterization of their encounter with law enforcement as an

arrest, the stop carried out by the officers was not, in fact, an arrest, but merely a detention

requiring reasonable suspicion. *See Blevins v. Commonwealth*, 40 Va. App. 412, 420-21 (2003)

("Fourth Amendment jurisprudence recognizes three categories of police-citizen [contacts]:

(1) consensual encounters, (2) brief, minimally intrusive investigatory detentions based upon

---

[3] Our clarification arises from the fact that Best and Lary's brief on this assignment of
error, including the cases cited, dealt primarily with the existence of probable cause.

specific, articulable facts, commonly referred to as *Terry* [*v. Ohio*, 392 U.S. 1 (1968),] stops, and (3) highly intrusive arrests and searches founded on probable cause." (alteration in original) (quoting *Wechsler v. Commonwealth*, 20 Va. App. 162, 169 (1995))); *see also Terry*, 392 U.S. 1. The facts alleged in the amended complaint, on its face, admit the existence of reasonable articulable suspicion. Best and Lary allege in paragraph 10 of their complaint that the officers, under the supervision of Chief Farr, "observed a hand-to-hand transaction between another individual and Best, that was assumed to involve illegal drugs, but there was no actual knowledge of an illegal drug transaction." The complaint goes on:

> After it was determined that the owner of the van was Best, [appellees] concluded that Best had a history of drug convictions; that Lary had a history of drug use; and that Lary allegedly had an outstanding warrant in the City of Alexandria for probation violations.

Best and Lary argue that the facts that support the stop are "provably false and bogus" because what the officers suspected was a drug transaction turned out to be "Best handing a cigarette to someone he did not know" and Best was not charged for drug offenses. This argument misses the point. The absence of charges or the fact that further investigation reveals a suspect's innocence does not mean that reasonable suspicion did not exist at the time of the stop, as "[t]he Constitution, after all, does not guarantee that only the guilty will be arrested" or stopped for an investigative detention. *Powell v. Commonwealth*, 57 Va. App. 329, 336 (2010) (quotations omitted). The suspected drug activity provided reasonable suspicion for the stop. *See Lawson*, 55 Va. App. at 552 (holding that a police officer was justified in stopping a vehicle when he saw what he "believed were 'hand to hand' drug transactions from [suspect']s vehicle"); *Kidd v. Commonwealth*, 38 Va. App. 433, 444 (2002) ("[T]hat [the officer] did not see and could not identify the items that were exchanged in the hand-to-hand transactions . . . does not preclude a finding of reasonable suspicion under these circumstances."); *DePriest v.*

- 10 -

*Commonwealth*, 4 Va. App. 577, 585 (1987) (finding reasonable suspicion for a stop even though the officer did not personally observe suspected narcotics change hands during a hand-to-hand transaction).

Therefore, the trial court did not err in finding that the stop was justified under the Fourth Amendment.

### *III. Battery*

The trial court sustained appellees' demurrer, determining that Best and Lary had not alleged facts sufficient to state a cause of action under any of their three theories of battery. In doing so, the trial court found that officer appellees were in personal danger when they fired multiple times into Best's vehicle. Further, the trial court found, as a matter of law, that Best posed an immediate danger of serious harm or death to the police officers at the scene. We analyze the assignments of error relating to the adequacy of Best and Lary's battery claims, the trial court's finding that officer appellees were in danger when they fired multiple times into Best's vehicle, and the trial court's determination that Best posed an immediate danger of serious harm or death to any police officer together, as they are intrinsically related to one another.

Best and Lary assert claims of battery based on: (1) the shooting that occurred at the outset of this incident, (2) the police dog used to effect Lary's arrest, and (3) Best's claim that he was unlawfully stabbed by one of the officers during or after his arrest. Because Best and Lary have not alleged facts sufficient to give rise to a claim of battery under principles of Virginia tort law, we affirm the trial court's decision.

"The tort of battery is an unwanted touching which is neither consented to, excused, nor justified." *Koffman v. Garnett*, 265 Va. 12, 16 (2003). A law enforcement officer enjoys "special protection" from tort liability, such as for a battery, when he or she is performing his or her duties in a lawful manner. *Mercer v. Commonwealth*, 150 Va. 588, 599 (1928); *see also*

*Parker v. McCoy*, 212 Va. 808, 813 (1972) ("[A police] officer is within reasonable limits the judge of the force necessary under the circumstances, and he cannot be found guilty of any wrong, unless he arbitrarily abuses the power conferred upon him."). Actions that otherwise would constitute a battery are permitted when justified in the performance of a law enforcement officer's duties. *See Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009) ("Virginia recognizes that police officers are legally justified in using reasonable force to execute their lawful duties."). Thus, to properly plead a battery claim against a law enforcement officer, a plaintiff must allege "a wrongful act," meaning that the law enforcement officer's conduct lacked "justification or excuse." *Pike v. Eubank*, 197 Va. 692, 700 (1956). If the force used is reasonable in execution of her lawful duty, the officer is immune from suit. *See Ware v. James City Cnty.*, 652 F. Supp. 2d 693, 712 (E.D. Va. 2009) (citing *Pike*, 197 Va. at 692), *aff'd*, 380 F. App'x 274 (4th Cir. 2010) (per curiam) (unpublished).

Viewing the facts pleaded in the complaint, as well as those depicted in the video, in the light most favorable to Best and Lary, Best and Lary were not engaged in any unlawful activity before the stop. Officer appellees approached Best and Lary, boxing them in with unmarked police vehicles. None of the officers identified themselves as law enforcement officers. However, the only reasonable inference to be drawn from the facts alleged is that Best and Lary both did, in fact, realize they were dealing with law enforcement officers. Only *reasonable* inferences will be credited to Best and Lary. *See Coward*, 295 Va. at 358 (holding that a plaintiff may rely upon inferences fairly deducible from the facts alleged in the pleadings, but only "to the extent that they are *reasonable*"). Four important facts support the conclusion that Best and Lary knew they were dealing with law enforcement: (1) the police truck flashed blue emergency lights, which are commonly associated with law enforcement, (2) the first plainclothes officer directed Best to "show [him] his hands," a directive also commonly

- 12 -

associated with law enforcement, (3) Best and Lary were both aware that Lary had an outstanding warrant, which would put them on notice that the police would likely be pursuing her, and, perhaps most importantly (4) *none* of the pleadings[4] filed by Best and Lary *ever* alleged that they did not realize they were dealing with law enforcement officers, notwithstanding that they had multiple opportunities to do so. While none of these facts alone would negate the reasonableness of the inference that Best and Lary did not realize they were dealing with law enforcement officers, taken together, the only reasonable conclusion is that Best and Lary did, in fact, realize that this was a law enforcement stop being carried out by police officers.

Best backed his vehicle up, colliding with one of the unmarked police vehicles in the process. One of the officers drew her firearm. Best's van then aggressively moved forward and backed up again, colliding multiple times with one of the police vehicles. The other three officers then drew their firearms, as well. Best then pulled out and proceeded to drive away. The video shows that in doing so, Best's van nearly struck one of the officers, who was positioned directly in front of the van. The group of four officers then fired multiple shots into the van, striking Best five times and Lary once. Ultimately, the officer had to jump out of the way to avoid being struck by the van.

Best and Lary allege in the amended complaint that, due to his gunshot wounds, Best was unable to continue driving the van. He pulled over and, before fainting, told Lary to flee. Upon waking up in the hospital, Best observed that he had also sustained what appeared to be a knife wound in his abdomen. Though Best does not know how he sustained this additional injury, he attributes it to appellees, asserting, "The knife wound was most likely inflicted by one of the defendants, without cause or justification, and while Best was either unconscious or helpless."

---

[4] Best and Lary filed both an initial complaint, as well as an amended complaint, lodged two other proposed amended complaints with the trial court, for which leave to amend was not granted, and filed three separate rounds of bills of particulars.

Upon fleeing from the van, Lary hid in some bushes. Thereafter, "a German shepherd was released by K9 Officer Russo and he and several currently unidentified law enforcement officers watched the dog viciously attack Lary, mauling her chest and arm, while they did nothing to intervene." Lary alleges that the officers laughed as she pled for help.

Best and Lary cite to the Virginia Code as well as multiple Virginia appellate decisions[5] for the proposition that

> [b]y wearing a uniform or displaying a badge, an officer gives the arrestee notice that he is dealing with an official person. Since a person has the right to resist an assault or threatened assault by a non-official person, it is important that the arrestee knows he is dealing with an officer.

*Foote v. Commonwealth*, 11 Va. App. 61, 66 (1990) (citing *Love v. Commonwealth*, 212 Va. 492, 495 (1971)). It is reasonably foreseeable that a plainclothes police officer's failure to alert an arrestee to the fact that he is dealing with a law enforcement officer has the potential to give rise to a situation that escalates, as both individuals believe they are acting lawfully in defending themselves against the unlawful threats of the other. However, Best and Lary were not privileged to defend themselves from an assault or threatened assault because, as we have concluded, the only reasonable inference is that Best and Lary were in fact aware that they were dealing with law enforcement officers. There is no right to resist an investigative detention. *See Commonwealth v. Hill*, 264 Va. 541, 547 (2002). Because Best was attempting to resist and flee

---

[5] Best and Lary cite to the *Foote v. Commonwealth*, 11 Va. App. 61 (1990), case, as well as Code § 19.2-81, to support their contention that officer appellees were required to identify themselves as law enforcement officers. Code § 19.2-81 specifies the requirements necessary to empower a police officer to make a warrantless arrest. There must be reasonable grounds or probable cause to suspect that a felony was committed. And further, that code section formerly required the officer to be in uniform or display a badge. However, that requirement has since been removed from the text. *See* 1998 Va. Acts ch. 684 (amending and reenacting among other sections, Code § 19.2-81, and containing no requirement that an officer be in uniform or display a badge to make a warrantless arrest). The Court in *Foote* expressly relied on the prior version of Code § 19.2-81 in coming to its conclusion in that case.

from a lawful investigative detention, his own conduct was an intervening and superseding cause of the injuries he and Lary sustained. Issues of "proximate causation ordinarily are questions of fact for the jury's determination." *Jenkins v. Payne*, 251 Va. 122, 128 (1996) (citing *Brown v. Koulizakis*, 229 Va. 524, 531 (1985)). "A court decides these issues only when reasonable persons could not differ." *Id.* (citing *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 285 (1989)). "The proximate cause of an event is that act or omission which, in natural and continuous sequence, *unbroken by an efficient intervening cause*, produces the event, and without which that event would not have occurred." *Id.* (emphasis added) (quoting *Beale v. Jones*, 210 Va. 519, 522 (1970)). Such is the case here.

The video shows that one of the officers was in immediate danger of being struck by Best's van. Best and Lary argue in their brief that the officer depicted in the video was not actually in any danger and that he was able to easily side-step the oncoming van and avoid any danger. This rationale misses the point. Just because an officer was able to deftly avoid injury does not mean that he was not in immediate danger. Virginia law recognizes that "[a] motor vehicle, wrongfully used, can be a weapon as deadly as a gun or a knife." *Luck v. Commonwealth*, 32 Va. App. 827, 833 (2000) (quoting *Essex v. Commonwealth*, 228 Va. 273, 281 (1984)). No other reasonable inference may be drawn other than that the officer reasonably believed he was in imminent danger. Officer appellees' use of deadly force in response to Best's efforts to flee was therefore justified. *See Parker*, 212 Va. at 813 ("[A police] officer is within reasonable limits the judge of the force necessary under the circumstances, and he cannot be found guilty of any wrong, unless he arbitrarily abuses the power conferred upon him.").

To the extent that Lary attempts to assert a claim of battery based on unreasonable use of force via use of a police dog, we note that there are no facts pleaded that would indicate that use of a police dog to apprehend a potentially dangerous suspect was not justified under these

- 15 -

circumstances. "[I]t is axiomatic that a person may not resist a lawful arrest effectuated with reasonable force." *Blankenship v. Commonwealth*, 71 Va. App. 608, 624 (2020) (citing *McCracken v. Commonwealth*, 39 Va. App. 254, 262 (2002) (en banc)). "Officers may use police K-9 dogs as an instrumentality to effectuate an arrest, and the mere use of a police K-9 to apprehend a defendant does not render the use of force unreasonable." *Id.* at 624-25 (citing *Robinette v. Barnes*, 854 F.2d 909, 913 (6th Cir. 1988)). Here, though the complaint alleges that a police dog was used to capture Lary, there are no facts alleged that would allow for a reasonable inference that the officers *did not use reasonable force* in doing so.

Best also asserts a battery claim upon the theory that, after his van came to a stop and he lost consciousness, one of the officers unjustifiably stabbed him. To support this claim, Best alleges that one of the officers "most likely" stabbed him. Apparently, this is because, before he passed out, he did not have a wound to his abdomen, but after he awoke in the hospital, he had what seemed to be a knife wound in his abdomen. However, Best does not allege any facts that point to how the wound was received, the instrumentality that caused the wound, or whom the perpetrator may have been. This element of ambiguity is not sufficient to meet the pleading standards in Virginia.

Best cites to *Pike* for the proposition that an officer may be held liable, not as the principal actor, but merely as an aider and abettor, for the conduct of another. 197 Va. at 699 ("Not only the principal actor or actual assailant, but also all others who aid, abet, counsel, or encourage the wrongdoer by words, gestures, looks or signs, are equally liable with him to the injured party, whether they were present when the wrongful act was done or not, and whether their motive was malicious or not."). In *Pike*, the plaintiff was restrained by one officer while another officer beat Pike. The officer restraining Pike allegedly told the other officer to "hit [him] again." *Id.* Based on those allegations, the Supreme Court determined that the officer

- 16 -

encouraging another to batter the plaintiff could be held liable, not as a principal batterer, but as an aider and abettor who acted in concert with the battering officer. *Id.*

While we agree with the general concept that one can be held liable for the conduct of another for aiding and abetting that conduct, or for working in concert with another, those theories are simply not applicable here, where Best can point to neither (1) the principal actor, nor (2) the officers who may have encouraged or acted in concert with that principal. Best's theory of battery is that: (1) the officers were in hot pursuit of him, and (2) one of the officers ultimately tracked him down and decided, for whatever reason, to stab him. Assuming without deciding that it is a fair and reasonable inference, given the circumstances as alleged, that one of the officers for reasons unknown stabbed Best, his claim nevertheless fails because he has not alleged (nor can he) which officer or officers actually participated in the stabbing. Best would have us proceed under a theory that all of the officers must be held accountable for the wrongful and unjustified actions of one unknown perpetrator. However, we decline to do so, guided by the principles laid out in *Pike* and other cases. Absent evidence of wrongdoing, we will not assume that a public official acts wrongfully and outside the scope of his duties. *W.M. Schlosser Co., Inc. v. Bd. of Supervisors of Fairfax Cnty.*, 245 Va. 451, 460 (Lacy, J., dissenting) (acknowledging that under Virginia law, there exists a "long-standing presumption that public officials act correctly" (citing *Hladys v. Commonwealth*, 235 Va. 145, 148 (1988))). "This presumption can be overcome by a showing of bias or improper conduct, but is not overcome by a showing of employment status alone." *Id.* (citing *Hladys*, 235 Va. at 148). It is not a reasonable inference, as a matter of law, to conclude that because the officers here were acting in concert to bring about the *lawful* capture of Best, they were also working in concert to effect the

*unlawful* stabbing of him by one of the officers. That conclusion goes against an entire jurisprudence surrounding tort liability of public officials.[6]

### IV. *Gross Negligence and Willful and Wanton Conduct*

The trial court sustained officer appellees' demurrer, holding that Best and Lary had not alleged facts sufficient to state a cause of action under theories of gross negligence or willful and wanton conduct. In doing so, the trial court held that officer appellees did not owe Best and Lary a special duty. Further, the trial court found, as a matter of law, that even if a special duty existed, the injuries to Best and Lary resulted from an intervening cause—Best's actions in fleeing and placing an officer in immediate danger. We analyze the assignments of error relating to the adequacy of Best and Lary's gross negligence claims, the trial court's determination that officer appellees owed no special duty to Best and Lary, and the trial court's determination that Best and Lary's own wrongful conduct was an intervening cause of their injuries, together, as they are intrinsically related to one another. Because we agree that Best's own actions were an intervening and superseding cause of his and Lary's injuries, we affirm the trial court's decision.

Best and Lary rely on two theories in asserting that officer appellees were grossly negligent and exhibited willful and wanton disregard: (1) the officers conducted an unlawful stop of Best and Lary, and (2) the officers did not identify themselves as law enforcement officers,

_____

[6] What Best essentially asks this Court to do is apply the concept of alternative liability—commonly deployed in cases of joint negligent conduct—to his intentional tort claim of battery. *See Ford Motor Co. v. Boomer*, 285 Va. 141, 151 (2013) (recognizing that "[Virginia] law provides a means of holding a defendant liable if his or her negligence is one of multiple concurrent causes which proximately caused an injury, when any of the multiple causes would . . . each have been a sufficient cause" (citing *Carolina, Clinchfield & Ohio Ry. Co. v. Hill*, 119 Va. 416, 421 (1916))). This theory of alternative liability is predicated upon *all* of the defendants having acted wrongfully. Here, Best has not alleged facts to show that all of the officers acted wrongfully and are therefore all tortfeasors. Instead, assuming his allegations are sufficient to create the inference he posits, he has alleged facts sufficient only to give rise to the inference that *one* of them *might* be the culprit, making that one unknown officer a tortfeasor. But we cannot rely on this allegation alone to shift the burden to the rest of the officers to exonerate themselves, in the face of the presumption that they acted lawfully.

thereby creating a dangerous situation that had the potential to escalate. As we explained above, however, the initial stop conducted by the police was lawful. And as will be explained below, Best and Lary cannot rely upon officer appellees' failure to identify themselves as law enforcement officers to state a claim of gross negligence or willful and wanton conduct.

Best and Lary assert that officer appellees owed them a "special duty" of care as "vulnerable" individuals in the "custody" of the officers. Assuming without deciding that a duty existed and that officer appellees' failure to identify themselves somehow breached that duty, Best and Lary's claim would still fail, as Best's own conduct was an intervening and superseding cause of the injuries sustained by each.

"The proximate cause of an event is that act or omission which, in natural and continuous sequence, *unbroken by an efficient intervening cause*, produces the event, and without which that event would not have occurred." *Jenkins*, 251 Va. at 128 (emphasis added) (quoting *Beale*, 210 Va. at 522).

> In order to relieve a defendant of liability for his negligent act, the negligence intervening between the defendant's negligent act and the injury must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury.

*Id.* at 129 (citing *Panousos v. Allen*, 245 Va. 60, 65 (1993)).

"[T]here is no yardstick by which every case may be measured and fitted into its proper place. In each case the problem is to be solved upon mixed considerations of logic, common sense, justice, policy and precedent." *Banks v. City of Richmond*, 232 Va. 130, 135 (1986) (quoting *Scott v. Simms*, 188 Va. 808, 816 (1949)). "[I]n resolving the question of proximate cause one of the key questions is whether there exists an intermediate cause disconnected from the primary fault that, self-operating, caused the injury." *Id.* (citing *Spence v. Am. Oil Co.*, 171 Va. 62, 74 (1938)).

Best and Lary's theory of gross negligence is that, in failing to identify themselves as law enforcement officers, officer appellees created a dangerous situation likely to escalate. However, it was Best's own conduct that drastically escalated the police encounter. Upon being lawfully stopped by the officers, and with the knowledge that he was dealing with law enforcement officers, Best made a conscious choice to attempt to evade detention. There is no right to resist an investigative detention. *See Hill*, 264 Va. at 547. The video depicts Best utilizing his van to plow his way through the other police vehicles, and in doing so, he endangered one of the on-foot officers. The officers were entitled to use deadly force to respond in kind to Best's conduct, and it was reasonably foreseeable that they would in fact do so. Best and Lary's claims sounding in negligence therefore fail, as Best's conduct was an intervening and superseding cause of his and Lary's injuries.

Best and Lary assert a separate claim of gross negligence against Chief Farr for negligent supervision. For the same reasons outlined above, assuming without deciding that Chief Farr was grossly negligent in his supervision of the officers, Best's conduct was the intervening and superseding cause of his and Lary's injuries. Therefore, the trial court did not err in sustaining Chief Farr's demurrer to Best and Lary's claims of gross negligent supervision against him.

*V. The Trial Court's Dismissal of the Claims with Prejudice*

Best and Lary assert that the trial court erred when it dismissed their amended complaint without leave to amend after only one amended complaint. They cite to Rule 1:8 of the Rules of the Supreme Court of Virginia, which provides that leave to amend pleadings should be "liberally granted in furtherance of the ends of justice." The decision whether to allow a party to amend their complaint rests in the discretion of the trial court. *See* Rule 1:8; *see also Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 403 (1985). Trial courts "retain[] discretion to deny a motion for leave to amend when it is apparent that such an amendment would

- 20 -

accomplish nothing more than provide opportunity for reargument of the question already decided." *Hechler Chevrolet, Inc.*, 230 Va. at 403. Here, the trial court permitted Best and Lary to file numerous bills of particulars, and Best and Lary filed multiple complaints. The trial court allowed Best and Lary to clarify a number of times exactly what claims they were asserting and what facts they relied upon in asserting those claims. Best and Lary had ample opportunity to allege the facts and claims that they sought, and dismissal with prejudice after this lengthy procedural history does not, therefore, amount to an abuse of discretion. Another amendment to the complaint would only lead to further argument of the issues the trial court already decided. The trial court did not abuse its discretion in denying further leave to amend.

*VI. Judge Fiore's Recusal and Dismissal of Defendant Clark as a Discovery Sanction*

Best and Lary assign error to Judge Fiore's refusal to recuse himself, as he was the judge who accepted Best's *Alford* plea in Best's related criminal case, and Judge Fiore therefore had personal knowledge of disputed evidentiary facts relevant to the case, in violation of Canon 3E(1)(a) of the Canons of Judicial Conduct. Further, Best assigns error individually to the trial court's dismissal of defendant Clark as a discovery sanction pursuant to Rule 4:12.

Because we determine that Best and Lary have failed to allege facts sufficient to state a cause of action under Virginia law, we need not reach either of these assignments of error, as any trial judge presiding over the case would have correctly sustained the demurrers of Chief Farr and officer appellees, and any claim against Clark would have been dismissed along with the others. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) ("[T]he doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available." (cleaned up) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

## CONCLUSION

For the reasons stated above, we determine that Best and Lary failed to allege facts sufficient to state a cause of action under Virginia tort law.  Therefore, the trial court did not err in sustaining the appellees' demurrers.  Further, Judge Fiore did not abuse his discretion in dismissing the case with prejudice.

*Affirmed.*