# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

## EDGAR L. WILLIAMS v. ROSE S. WILLIAMS.

June 6, 1945.

Record No. 2924.

Present, All the Justices.

The opinion states the case.

*Vincent L. Parker* and *William L. Parker*, for the appellant.

*John Joseph Baecher*, for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

In June, 1942, appellant instituted in the Circuit Court of the city of Portsmouth a suit against the appellee, the object of which was to obtain a divorce *a vinculo matrimonii*, on the grounds of desertion. Following the institution of the suit, appellant filed an affidavit that he had made diligent effort to ascertain in what county or corporation of the Commonwealth the appellee "was, without effect."

Upon that affidavit an order of publication was directed, pursuant to the provisions of section 6069 of the Code of Virginia. Upon the maturity of the order of publication, depositions were taken in support of the allegations of the bill of complaint, and, upon final hearing by the chancellor, a decree of divorce *a vinculo* was entered on July 27, 1942.

Appellee, on the 23rd day of August, 1943, filed a petition seeking abrogation of the divorce decree granted appellant.

The grounds in the petition upon which relief was sought, in summary, allege that appellee was not served with process in the suit and was not aware of its pendency; that the suit was commenced on an order of publication which alleged "that due diligence has been used by and on behalf of complainant to ascertain in what county or corporation she, the defendant, is, without effect;" that this allegation was false and fraudulent for the reason that appellant knew that appellee was a resident of Sheckels, Anne Arundel county, Maryland; that the first information appellee had of the institution of the suit was derived from a communication received from the War Department, office of Dependency Benefits, notifying her that the allowance she had been receiving from appellant had been discontinued because of the divorce decree granted appellant.

In support of her petition appellee filed an affidavit. At the time this petition was filed, and at all times subsequent to the filing thereof, appellant was in the armed service of the United States and was stationed in Iceland.

No process was ever served upon appellant, but in lieu thereof, Vincent L. Parker, who had been counsel of record for appellant in the divorce suit, was appointed attorney to defend him in all subsequent proceedings.

Pursuant to his appointment as counsel, Mr. Parker filed the affidavit of Berta L. Williams, mother of appellant, which set forth that appellant was in the army of the United States and stationed in Iceland. Upon receipt of notice that depositions would be taken in support of the allegations of appellee's petition, Parker attended the taking thereof and objected thereto on the ground that appellant was a member of the armed forces of the United States. Parker likewise objected when the cause was called for a hearing on the merits.

Upon a final hearing, the prayer of the petition that the

decree of July 27, 1942, awarding appellant a divorce, be revoked, was granted, and appellant assigns error.

The motion of appellee to dismiss this appeal on the ground that certain evidence taken *ore tenus* in support of appellee's petition is not incorporated in the record, is without merit, for the reason that the omitted evidence is but supplementary to her allegations of the fraudulent procurement of the divorce. It is merely corroborative of those specific allegations and affords no basis upon which to determine the question involved in this appeal,—the right of the appellant, a person admitted by the petition to be in the military service of the United States, to a stay of the proceedings. The record is sufficient for the court to properly decide that question. Virginia Code, 1942 (Michie), section 6339.

Though we conclude that appellee has in her petition made out a *prima facie* case and that the court in the exercise of its discretion was warranted on the alleged facts before it in entering the decree complained of, this conclusion does not determine the question involved.

The sole question presented in this cause is: Did the court abuse its discretion in refusing to stay the proceedings pursuant to the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U. S. C. A., appx., sec. 521, 11 F. C. A., Title 50, appx. 9, sec. 201)?

The applicable provision of the Act reads:

"At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

In *Lightner* v. *Boone*, 222 N. C. 205, 22 S. E. (2d) 426,

the Supreme Court of North Carolina had occasion to construe this act. Speaking for the court, Mr. Chief Justice Stacy, in affirming the judgment of the trial court denying a stay of proceedings, stated this doctrine:

▮ "Under the Soldiers' and Sailors' Civil Relief Act, one in military service is not entitled to a stay of judgment against him as a matter of law if, in the opinion of a court, the ability of such person to comply with the judgment is not materially affected by reason of his military service. Soldiers' and Sailors' Civil Relief Act of 1940, secs. 200, 201, 50 U. S. C. A., Appendix, secs. 520, 521."

Upon a writ of certiorari this judgment was affirmed by the Supreme Court in *Boone* v. *Lightner*, 319 U. S. 561 (63 S. Ct. 1223, 87 L. Ed. 1587).

Mr. Justice Jackson, delivering the majority opinion of the court, said:

▮ "The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burden of the nation. The discretion that is vested in trial courts to that end is not to be withheld on nice calculations as to whether prejudice may result from absence, or absence result from service. Absence when one's rights or liabilities are being adjudged is usually *prima facie* prejudicial. But in some few cases absence may be a policy, instead of the result of military service, and discretion is vested in the courts to see that the immunities of the Act are not put to such unworthy use."

It is the contention of appellee that this decision is conclusive of the question in issue. We are not in accord with that contention and our non-concurrence is based upon the dissimilarity of facts set forth in the *Boone-Lightner Case*, *supra*, and the facts in the case at bar.

In the *Boone-Lightner Case*, at page 562, these facts are set forth *in extenso:*

"Boone's mother-in-law, by will of which he was executor and trustee, created a trust fund for the education of the

grandchildren, including one child of Boone's. Shortly after her death, and in September, 1938, another child was born to him. Since this child was unprovided for in the will, the father-in-law made arrangements which upon his death put into Boone's hands a fund of about $15,000. It is conceded that the fund was a trust for the benefit of the daughter. There was controversy whether it was governed, as Boone claimed, by a letter signed by the father-in-law which placed no restriction on his discretion; or, as Mrs. Boone, who has been sustained by the courts of North Carolina, claimed, by the same conditions as the testamentary trust set up by her mother. For our purposes it is enough that it was admittedly a trust and that grounds were alleged sufficient to move the state court to require an accounting.

"The summons and complaint were served on Boone personally in North Carolina on June 23, 1941. He was then in military service of the United States as a Captain stationed in the office of the Under Secretary of War in Washington.

"Boone filed a verified answer denying the jurisdiction of the court, claiming that on June 23, 1941, the same day the summons was served, he changed his 'domicile and legal residence' to Washington, D. C., and his daughter's as well. He admitted receipt of the fund in trust, asserted the trust was governed by the letter referred to, and pleaded that he 'is not bound to report to any Court.' He denied all charges of misconduct of the fund, denied that there were grounds for apprehension that the funds were unsafe, and asserted that 'he has exercised at all times good faith in caring for this fund.' He also stated that 'he has not dissipated one penny of the fund, nor has he made any withdrawal from the fund since the day the money was turned over to him.' He pleaded at length facts to support his claim that he was no longer domiciled in North Carolina and to support his allegation that the trust was 'a voluntary trust not subject to the jurisdiction of any court or restricted in any way by the terms of any will.'

"On February 2, 1942, the cause came on for hearing.

Boone moved for a continuance to the 25th of May, 1942, his counsel, Roy L. Deal, stating that he expected soon to be called into service and would be unable to try the case, and asking the continuance in order to give defendant ample time to employ other counsel. The request was granted, and that date peremptorily set for the trial. The court forbade transfer of securities constituting the trust and required that on the trial date they and any funds of the trust be turned over to the Clerk of the Court to abide further orders. Its order admonished that the court would at the earliest practical date ascertain the status of the trust fund and that the presence of Boone himself at the trial 'is highly desirable,' but left to the discretion of Boone and his counsel whether it was necessary. In order, however, to advise defendant Boone and his superior officers of the importance of the litigation, the court directed that a certified copy of the order be sent to The Adjutant General of the United States Army at Washington.

"When the trial day came, Boone invoked the Soldiers' and Sailors' Civil Relief Act of 1940, and demanded that the trial be continued until after the termination of his service in the Army or until 'such time as he can properly conduct his defense.' At this time there were before the trial court not only the pleadings and the affidavits submitted by Boone and his counsel but also certain depositions which Boone had made and procured and which had been returned to the court, and also Boone's own statement of transactions which accompanied certain securities and funds which he had turned over to the Clerk of the Court. Boone was not present, but counsel appeared for him to move for a further continuance under the Sailors' and Soldiers' Civil Relief Act. This motion was denied, counsel who had represented the motion withdrew from the case, and the trial proceeded. The verdict of the jury went against Boone; and judgment was entered that the trust was governed by the terms of the will, that Boone had been guilty of serious misconduct of the trust fund, and that he be held personally

liable for the consequent loss to the trust fund of more than $11,000, and removed as trustee."

In reaching the conclusion that there was no abuse of the discretionary power vested in the court, this language is employed:

"Some question is raised as to whether the findings of the trial court meet the requirements of the Act. In the order denying the continuance, it found as a fact that 'the defendant in this cause is deliberately and wilfully attempting to evade an ultimate determination of the issues involved in the litigation entitled as above, and is exercising his assumed right under the Act referred to above to avoid such determination.' It also found the defendant 'is not upon the motion for continuance acting in good faith.' In the final judgment the court found as a fact 'that the defendant has had ample time and opportunity to properly prepare his defense in this case and that his military service has not prevented him from doing this.' It found that 'defendant had full opportunity to prepare and put in his defense if he had one,' and that 'It is apparent that he has only sought to use the provisions of the Soldiers' and Sailors' Civil Relief Act as a shield for his wrongdoing, and this Court, who once wore a U. S. uniform with pride, does not intend for this to be done.'

  \*  \*  \*  \*  \*  \*  \*

"We think the opinion of the court that Boone's military service did not prevent him from being present and doing whatever could have been done by way of defense finds ample support in the evidence. Boone had been able to get away from Washington to go to New York for the taking of depositions on two separate occasions. He had long notice of the trial date and the court had placed in the files of his Department its order showing the desirability of his presence at that time. Boone, being a lawyer and presumably knowing the gravity of the accusations against him, might be expected to make some move to get leave to be present. If it were denied, he might be expected to expose every circum-

stance of his effort to the court in his plea for continuance. Boone's affidavit, after reciting that he was assigned to the International Division, Headquarters, Service of Supply, Washington, D. C., says 'The work in said Division is very heavy, and full time and some extra time are required of all officers in said Division, including the defendant. Prior to the declaration of War on Dec. 8, 1941, the work in this Division was very heavy, but since the declaration of War the volume of work has been greatly increased. No leaves whatever have been granted, except in cases of serious emergency.'

"Most lawyers trained in the equity tradition of trustee fidelity would regard a trial of this kind as a serious emergency. Did he apply for a leave at all? The affidavit pretty clearly implied that he had not. We think the court had ample grounds for the opinion that Boone made no effort to attend to duties that should weigh heavily upon the honor of a lawyer-trustee."

It is thus to be observed that every opportunity was afforded Boone to properly make his defense. Has such an opportunity been afforded appellant?

The alleged facts set forth in the petition and appearing from the depositions filed, if taken as true, convict the appellant of the grave crime of perjury and also subject him to the penalty which may be inflicted in a contempt proceeding based upon the alleged fraud practiced upon the trial court.

Appellant, unlike Boone, has never had his day in court. No process calling him into court has even been served upon him. No opportunity has been afforded him to offer witnesses in rebuttal or to testify in his own behalf. Even to this day, so far as the record shows, no effort has been made to ascertain his location in Iceland in order that a copy of the decree blasting his character might be delivered to him.

It may be that the charges filed against appellant are true, but we are not concerned with his guilt or innocence at

this stage of the case. Our only concern now is in determining whether or not appellant "has had his day in court." In our opinion the discretion exercised by the trial court in denying him this opportunity has been abused, and the decree entered must be reversed and the case remanded with direction to the trial court to reinstate the case upon the docket for a future determination on the merits.

*Reversed and remanded.*