# COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges AtLee and Friedman
Argued at Fredericksburg, Virginia

**PUBLISHED**

SHIYE QIU

v.      Record No. 0459-22-4

CHAOYU HUANG,
 ANNA OUSPENSKAYA AND
 ARLENE STARACE

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER
APRIL 18, 2023

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge[1]

Jacqueline A. Kramer (Thomas K. Plofchan, Jr.; Westlake Legal
Group, on briefs), for appellant.

Bernard J. DiMuro; James R. Hart; Max F. Maccoby (Jonathan R.
Mook; Robert F. Horan, III; DiMuroGinsberg, PC; Hart & Horan,
P.C.; Washington Global Law Group PLLC, on brief), for
appellees.


Shiye Qiu appeals a decision of the circuit court dismissing his various claims against the

appellees, Chaoyu Huang, Anna Ouspenskaya, and Arlene Starace. He argues that the court

erred by sustaining their joint demurrer and dismissing his claims of tortious interference with

parental rights and civil conspiracy against the three women, as well as his claim of fraud against

Starace. He further contends that the court erred by staying the proceedings, including

discovery, prior to ruling on the demurrer. We hold that the circuit court did not err, and we

affirm the challenged rulings.

---

[1] Judge Devine entered the final order in this case. Judge Richard E. Gardiner entered the
orders staying the proceedings and later lifting the stay. Judge David A. Oblon entered the order
sustaining the appellees' demurrer and dismissing the claims against them.

I.  The Divorce and the Father's Subsequent Tort Complaint

Qiu (the father) and Sharon Yip (the mother) were married in 1995, and their daughter,

M.Q., was born in 2005.  The parties separated when M.Q. was eight years old.  A few months

later, the mother began divorce and custody proceedings and also sought pendente lite relief.

Two years later, in 2016, while the divorce and custody proceedings were ongoing, the

father filed the *pro se* tort complaint that is the subject of this appeal.  In that complaint, he

alleged that two of the mother's acquaintances and one of her attorneys were tortiously involved

in the custody dispute.  For purposes of this appeal, the three relevant defendants were Chaoyu

Huang, the mother's friend; Anna Ouspenskaya, M.Q.'s piano teacher and someone with whom

the mother had a "deep friendship and intimate relationship"; and Arlene Starace, the mother's

attorney during the first part of the divorce and custody proceedings (collectively the

defendants).  The complaint also named Arnold Small, Ph.D., a therapist who treated both M.Q.

and the father.[3]  The father did not seek service of the complaint at that time.

In February 2017, the circuit court entered the final divorce decree and awarded joint

legal custody of M.Q. to the parents, with primary physical custody to the mother.  Shortly

afterward, the father retained counsel in the tort suit and obtained service of the complaint on the

defendants, who challenged it with demurrers.  The circuit court granted the father leave to

amend various parts of the complaint on multiple occasions.  In June 2019, he filed his fifth

---

[2] This Court views the underlying facts pleaded in the father's fifth amended complaint in the light most favorable to him.  *See Hooked Grp., LLC v. City of Chesapeake*, 298 Va. 663, 667 (2020) (holding that in reviewing a ruling on a demurrer, the appellate court "consider[s] as admitted the facts expressly alleged and those which fairly can be viewed as impliedly alleged or reasonably inferred from the facts alleged" (quoting *Welding, Inc. v. Bland Cnty. Serv. Auth.*, 261 Va. 218, 226 (2001))).

[3] Dr. Small settled the father's claims against him and is not a party to this appeal.

amended complaint, which was more than fifty pages long and contained nine counts. Counts one to four, eight, and nine are at issue in this appeal.

Counts one, two, and three, respectively, alleged that Huang, Ouspenskaya, and Starace tortiously interfered with the father's parental and custodial rights intentionally and without his consent. With regard to Huang and Ouspenskaya, the complaint alleged that they encouraged the mother to leave the father, helping her formulate and implement a departure plan that included taking M.Q. with her. The father further alleged that Ouspenskaya encouraged M.Q. to view her as a "substitute" parental figure. With regard to Starace, the complaint alleged that she, too, intentionally interfered in the father's parental and custodial relationship with M.Q. in various ways.

Additional facts pleaded made clear that none of the three women physically took M.Q. from the father or the mother. Instead, they merely encouraged and aided the mother in leaving the father and in obtaining a divorce and award of shared custody. The complaint also averred that the women "played a role in physically, mentally and emotionally alienating M.Q." from her father without his consent, "severely damaging the [parent-child] relationship."

These first three counts asserted further that, from 2014 to 2017, as result of the behavior of the three defendants, the father was unable to speak with M.Q. by phone and was permitted to see her only once a week for dinner under the mother's supervision. Additionally, the father alleged that for approximately one year from 2017 to 2018, he was unable to have any contact with M.Q.[4] Finally, the father suggested that his contact from that date forward was limited to one dinner per week and alternating Saturdays. He sought compensatory damages of $2 million and punitive damages of $1 million from each defendant.

---

[4] The father's alleged lack of visitation during this period postdates the 2017 divorce decree.

Count four of the complaint alleged that Starace committed fraud by falsely representing the nature of the mother's relationship with Ouspenskaya, which he alleged was romantic. The count further asserted that Starace falsely represented that the father abused M.Q. and falsely alleged cruelty as a ground for divorce. The allegation included that these representations harmed his parental and custodial rights, and he requested damages in the same amounts as for the tortious interference claims.

Finally, counts eight and nine alleged that Huang, Ouspenskaya, and Starace were involved in two different civil conspiracies. Count eight contended that the three women conspired to commit tortious interference with his parental rights and fraud.[5] Count nine averred that Huang and Ouspenskaya engaged in a different but similar civil conspiracy. The father sought the same damages for each conspiracy count that he did for the tort and fraud counts.

## II. Stay of Proceedings and Final Demurrer

At a scheduling conference in September 2019, trial was set for the following July. On February 14, 2020, while discovery was proceeding, the defendants filed a joint motion to stay the proceedings pending resolution by the Supreme Court of Virginia of an appeal in a separate, unrelated case, *Padula-Wilson v. Landry*, 298 Va. 565 (2020). They represented that *Padula-Wilson* also involved a claim of tortious interference with parental rights. The defendants argued that the Supreme Court's opinion was likely to be dispositive of the issues raised in the father's complaint or at least to "set forth the parameters" under which his primary claims would be resolved. They also provided the court with copies of the briefs filed in *Padula-Wilson* and noted that oral argument in that case was "likely to occur in the next few months." On February 28, 2020, the court granted the requested stay, which included discovery.

---

[5] Count eight's conspiracy claim also named Dr. Small.

- 4 -

Three months after the motion was filed, on May 14, 2020, the Supreme Court issued its opinion in *Padula-Wilson*. Based on that decision, the defendants made a motion to lift the stay, withdraw their answers, and file a renewed joint demurrer to the father's complaint. By order of July 16, 2020, the court granted the requests.

On July 31, 2020, following a hearing, the court sustained the demurrer in all relevant respects, dismissing the tortious interference, fraud, and conspiracy claims against the three defendants, as well as other counts against Dr. Small. The court granted the father leave to amend one of the counts against Dr. Small. After additional proceedings, the father and Dr. Small reached a settlement, and the court dismissed the action with prejudice. The father then noted this appeal of the previously dismissed claims against Huang, Ouspenskaya, and Starace.

ANALYSIS

The father challenges the circuit court's decision granting the defendants' joint demurrer. He also contends that the court erred by granting their motion to stay the proceedings.

I. Demurrer

The father suggests that the complaint properly stated claims against the defendants for tortious interference with parental rights, fraud, and civil conspiracy. As a result, he contends that the circuit court erred by sustaining their joint demurrer to counts one through four, eight, and nine.

We evaluate the father's contentions under the standards applicable to all demurrers. The appellate court reviews a decision to sustain or overrule a demurrer de novo because that decision "involves issues of law." *Coutlakis v. CSX Transp., Inc.*, 293 Va. 212, 216 (2017). A demurrer "tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 357 (2010) (quoting *Augusta Mut. Ins. Co. v.*

- 5 -

*Mason*, 274 Va. 199, 204 (2007)). Consequently, a demurrer "can be sustained if the pleading, considered in the light most favorable to the plaintiff, fails to state a valid cause of action." *Hooked Grp., LLC v. City of Chesapeake*, 298 Va. 663, 667 (2020) (quoting *Welding, Inc. v. Bland Cnty. Serv. Auth.*, 261 Va. 218, 226 (2001)). In evaluating a demurrer, the appellate court "consider[s] as admitted the facts expressly alleged and those which fairly can be viewed as impliedly alleged or reasonably inferred." *Id.* (quoting *Welding, Inc.*, 261 Va. at 226).

As relevant to the first three assignments of error, the demurrer involved three potential legal theories for recovery: tortious interference with parental rights, fraud, and civil conspiracy.

### A. Tortious Interference with Parental Rights

The Supreme Court of Virginia first recognized tortious interference with parental rights as a legitimate common-law cause of action in *Wyatt v. McDermott*, 283 Va. 685, 691, 699 (2012).[6] The Court refined the scope of the tort in *Coward v. Wellmont Health Sys.*, 295 Va. 351, 361-66 (2018), and *Padula-Wilson v. Landry*, 298 Va. 565, 576-78 (2020).

*Wyatt* and *Coward* involved adoption proceedings, and to date, adoption provides the only context in which the Supreme Court has recognized that the tort is available in Virginia. In *Coward*, 295 Va. at 354-57, the biological parents placed their child for adoption, but the biological mother later changed her mind. After regaining physical custody, she sued the would-be adoptive parents, their attorney, and medical staff. *Id.* at 357-58. The circuit court overruled the demurrer of the potential adoptive mother, allowing the tortious interference claim against her to proceed, but it sustained the demurrers of the attorney and medical staff, holding that the allegations did not state a claim against them for tortious interference with parental rights. *Id.* at 362-63. The Supreme Court, while recognizing and further defining the cause of action, held that the circuit court did not err by sustaining the demurrers. *Id.* at 360-62, 368.

---

[6] *Wyatt* addressed a certified question of law from a federal court. 283 Va. at 689.

As the Supreme Court has explained, a tortious interference claim involves "depriv[ing]" the complaining parent of his or her "parental or custodial rights" by preventing that parent from "exercis[ing] some measure of control over [the] child's care, rearing, safety, well-being, etc." *Wyatt*, 283 Va. at 698 (quoting *Kessel v. Leavitt*, 511 S.E.2d 720, 761 n.44 (W. Va. 1998)). More specifically, a claim of tortious interference with parental rights in Virginia requires proof of four elements: (1) "a right to establish or maintain a parental or custodial relationship with [one's] minor child"; (2) an "outside" party's "intentional[] infere[nce]" with that right "without that parent's consent"; (3) resulting "harm to the . . . parental or custodial relationship"; and (4) damages. *Id.* at 699 (quoting *Kessel*, 511 S.E.2d at 765-66); *accord Coward*, 295 Va. at 360.

With regard to the first element, the right to a relationship, tortious interference is distinguishable from the tort of alienation of affection. *Wyatt*, 283 Va. at 698. Alienation of affection "connotes only that the parent is not able to enjoy the company of" the child, not that the "offending party has removed parental or custodial authority from [that] parent." *Id.* (quoting *Kessel*, 511 S.E.2d at 741 n.44). Further, and most importantly, the alienation-of-affection tort was abolished by Virginia's General Assembly more than 45 years ago. *See* Code § 8.01-220 (1977); *accord Wyatt*, 283 Va. at 698.

Regarding the second element of a claim for tortious interference, intentional interference with the right, recovery is barred if the person being sued has "substantially equal rights" to a parental or custodial relationship with the child. *See Wyatt*, 283 Va. at 701-02 (quoting *Kessel*, 511 S.E.2d at 766). For example, in the case of a married couple, *prior* to any custody determination, the parents have equal or substantially equal rights to their children. *See id.* As a result, a cause of action for tortious interference by one parent against the other will not lie. *See id.* at 702. Further, *after* a custody determination, the remedy for a dispute between parents is pursuant to *that* statutory scheme, i.e., through a request to modify custody or hold the other

party in contempt for failing to comply with an existing order. *See Padula-Wilson*, 298 Va. at 576-78. Consequently, in Virginia, no parent can successfully maintain a tortious interference claim against another parent whose rights have not been terminated. *See Wyatt*, 283 Va. at 701-02.

Significantly, the decision in *Padula-Wilson* analyzed these principles outside the adoption context. In that case, a mother sued a guardian ad litem and various mental health experts involved in child custody and visitation litigation between her and the children's father. 298 Va. at 569-72. In the custody proceeding, the mother was awarded joint legal and physical custody. *Id.* at 570-71. In the subsequent tort action, she alleged that the guardian and others intentionally provided information to the court in the course of the custody litigation that interfered with her ability to see her children, either totally or partially, for a period of at least three years prior to the ultimate resolution of the custody issue. *Id.* at 571-72. The circuit court rejected the mother's legal claims and sustained the defendants' demurrers, relying on multiple rationales. *Id.* at 572-73.

The Supreme Court affirmed, holding that the underlying custody and visitation proceeding provided the mother with "ample due process" in relation to her parental and custodial rights. *Id.* at 576. The opinion noted that to the extent the mother alleged that the defendants violated court orders entitling her to visitation with her children, she could have sought the circuit court's help in a contempt or other type of proceeding. *Id.* at 577. It distinguished these circumstances from the adoption context of *Wyatt*, in which a tortious interference claim was the "sole recourse for the wrong done to a father's parental rights." *Id.* at 576.

The Court recognized the need to protect guardians ad litem and expert witnesses from claims of tortious interference based solely on their participation in custody and visitation

proceedings. *Id.* at 578. It also clarified that the "fact that some of the alleged conduct took place outside of the courtroom [did] not change the answer." *Id.* at 577. The Court further reasoned that the case did not involve an action by a parent "entitled to the custody of a minor child against one who [either] by force abduct[ed] the child from its home[] or . . . induce[d] the child to leave its home with knowledge that the parent ha[d] not consented." *Id.* at 578 (quoting *Restatement (Second) of Torts* § 700 cmt. a). Finally, the Court noted the availability of Code § 18.2-49.1, which proscribes the felony of holding a child outside the Commonwealth and away from a parent entitled to custody or visitation pursuant to a court order. *Id.* at 577.

The Supreme Court concluded that the existence of these various remedies—in contrast to the adoption context in *Wyatt*—counseled against recognizing a cause of action for tortious interference with parental rights on such facts. *Id.* at 576. Pointing out that "[d]ivorce and custody cases inherently involve enough frustration, heartache, stress, and expense," it "decline[d] to expand the scope of the tort of interference with parental rights by opening a new front for disappointed, angry, frustrated, or vindictive parents to renew battle." *Id.* at 578. The Court affirmed the circuit court's ruling sustaining the defendants' demurrers. *Id.*

The holding in *Padula-Wilson* is sufficiently analogous to this case to control the outcome here. Preliminarily, to the extent the father's allegations constitute a claim that third parties Huang and Ouspenskaya attempted to convince M.Q. that her father abused her in order to deprive him of her love and companionship, those allegations, standing alone, do not implicate the tort of interference with parental rights but only of alienation of affection, which is not recognized by Virginia law. *See Wyatt*, 283 Va. at 698.

Further, to the extent the father contends that the defendants' alienation efforts were for the ultimate purpose of interfering with his parental and custodial rights, these allegations fail to state a claim of tortious interference with parental rights as that action has been recognized in

Virginia. This is so in part because, as explained more fully below, one cannot be permitted to do indirectly what he is forbidden from doing directly.

A tortious interference claim cannot be brought directly against a parent who retains parental and custodial rights over a child. *See Wyatt*, 283 Va. at 701-02. Here, the mother, like the father, had full parental and custodial rights over M.Q. prior to the court's adjudication of the custody issue. And the mother also retained actual physical custody and control of M.Q. at all times relevant to the lawsuit. Therefore, the father could not maintain a suit against her for tortious interference, and he has not sought to do so.

Virginia law counsels and we now hold that the father must also be barred from bringing a tortious interference claim against the mother *indirectly*—by suing a third party whom he alleges merely attempted to impact her decision-making or participated in a related custody matter. To hold otherwise would improperly permit the complaining parent to do indirectly that which he cannot do directly. Further, it would run afoul of the holding in *Padula-Wilson*, which provides that the tort is available against a third party only where that person removes or detains a child from the complaining parent or prevents that parent from exercising his parental or custodial rights. *See* 298 Va. at 576, 578. Third-party action in *an adoption proceeding* that prevents the complaining parent from receiving notice of the proceeding and participating in it or objecting to it constitutes action that tortiously interferes with that parent's exercise of his parental or custodial rights. *See Coward*, 295 Va. at 360-62; *Wyatt*, 283 Va. at 703. However, *Padula-Wilson* makes clear that third-party action directed merely at depriving one parent of his parental and custodial rights vis-à-vis the other parent is distinguishable because it is readily addressable within the framework of custody law. *See* 298 Va. at 576-78. That decision also does not limit its restrictions only to third parties who serve as witnesses in a custody matter. *See id.* at 577 (observing that third-party behavior outside the courtroom is protected). As a

result, this Court holds that the complaint failed to state a claim for tortious interference against the defendants and that the circuit court consequently did not err by sustaining the demurrer to the first three counts of the complaint.[7]

With regard to the father's tortious interference claim against Starace, the mother's original divorce attorney, he alleges that she knew or should have known that Ouspenskaya was not a neutral third-party piano teacher. He further claims that Starace withheld that information from Dr. Small and also helped hide the true nature of the women's relationship from a court-ordered custody evaluator. The father also alleges that Starace colluded with Ouspenskaya and Dr. Small to paint him in a negative light and alienate M.Q. from him. Finally, he avers that Starace knowingly included false allegations of cruelty and abuse in the divorce complaint to interfere with his parental and custodial relationship with the child. To the extent the father alleges that her actions constituted fabricating or hiding evidence rather than simply zealously representing her client, he had the ability to challenge those claims through discovery, cross-examination of adverse witnesses, and presentation of his own evidence in the custody litigation, and he received due process as a result.[8] *See id.* at 576-77.

Accordingly, we hold that the complaint fails to state a claim for tortious interference with parental rights against Huang, Ouspenskaya, and Starace and that the circuit court did not err by sustaining the demurrer as to counts one, two, and three.[9]

---

[7] Applying this distinction here does not leave the father without remedies. *See Padula-Wilson*, 298 Va. at 576-77 (distinguishing *Wyatt*, in which a tortious interference suit was the father's "sole recourse," and outlining additional remedies available to Padula-Wilson); Code §§ 20-103, -124.3 (authorizing a court to order visitation on a pendente lite basis).

[8] The father could also have lodged a complaint against Starace with the Virginia State Bar. *See generally* Va. Sup. Ct. Rules Pt. 6, § IV, Para. 13 (setting out the procedure for the filing and investigation of complaints under the Virginia State Bar's disciplinary system).

[9] We do not hold that a parent may never maintain a successful tortious interference claim against an attorney. To the contrary, the Supreme Court has approved of such claims in

- 11 -

## B. Fraud

The father contends that the circuit court erred by sustaining the renewed demurrer to the fourth count of the complaint, which alleges that Starace committed fraud. He asserts that the court erred by ruling that the fraud count was "derivative [of] or reliant on" the tortious interference claim and, consequently, that *Padula-Wilson* required the court to sustain the demurrer on the fraud count too. The father argues that the fraud count is a "stand-alone" claim not controlled by *Padula-Wilson*.[10] We need not examine this claim in light of *Padula-Wilson* because we hold that a different ground provides a better basis for decision—our conclusion that the complaint fails to plead facts that meet all necessary elements of the tort of fraud.

Under "the traditional doctrine of judicial restraint," an appellate court decides cases "'on the best and narrowest grounds available.'" *See Levick v. MacDougall*, 294 Va. 283, 302 (2017) (quoting *Commonwealth v. White*, 283 Va. 411, 419 (2017)). This principle generally permits the appellate court to resolve an appeal on a different ground than the one upon which the lower court relied as long as the alternate ruling does not require additional findings of fact. *See Spinner v. Commonwealth*, 297 Va. 384, 391 (2019). Where the issue involves a circuit court's ruling on a demurrer, the question is one of law, which the appellate court reviews de novo. *See Coutlakis*, 293 Va. at 216; *see also Hooked Grp., LLC*, 298 Va. at 667 (noting that ruling on a demurrer requires viewing the facts in the light most favorable to the plaintiff). As such, no

---

the adoption context. *See Wyatt*, 283 Va. at 703 (recognizing that the availability of the tort "would help deter third parties such as attorneys and adoption agencies from engaging in the sort of actions alleged to have taken place" in that case); *see also Coward*, 295 Va. at 356, 366, 368 (upholding a ruling sustaining an attorney's demurrer to a tortious interference claim because the complaint did not allege she knew that the mother did not consent to the adoption).

[10] To the extent the father suggests the circuit court could not revisit its earlier decision overruling "the original demurrer" to the fraud count, his suggestion is incorrect. Under Rule 1:1, the court retained authority to change that ruling until 21 days after entry of the final order. *See Torian v. Torian*, 38 Va. App. 167, 175 (2002); *Cloutier v. Queen*, 35 Va. App. 413, 420-21 (2001). Here, the court changed its decision well within that time frame.

findings of fact are involved. *Cf. Rives v. Commonwealth*, 284 Va. 1, 3 (2012) (affirming on a different ground where "the case went to trial on stipulated facts," obviating the need for any additional factual findings). Further, in the context of an appeal of a decision sustaining a demurrer, the alternative ground must be one that the defendant raised below. *See* Code § 8.01-273(A) ("No grounds other than those stated specifically in the demurrer shall be considered by the court."); *Theologis v. Weiler*, 76 Va. App. 596, 604-05 & n.4 (2023). Here, we examine whether the statutory preservation requirement was met simultaneously with our analysis of the sufficiency of the allegations pleaded.

Fraud as alleged in count four of the complaint is a common-law tort. *See generally Ballagh v. Fauber Enters., Inc.*, 290 Va. 120, 126 (2015). A tort action provides a civil remedy for "a breach of a duty that the law imposes on persons who stand in a particular relation to one another." *Tort*, *Black's Law Dictionary* (11th ed. 2019). A party alleging common-law fraud must prove six elements: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to him." *Thompson v. Bacon*, 245 Va. 107, 111 (1993). In keeping with the basic principle that tort law involves a breach of duty between people "who stand in a particular relation *to one another*," *see Black's*, *supra* (emphasis added), the fifth element specifically requires the party bringing suit to "plead that *he* relied on th[e] false representation," *Sales v. Kecoughtan Housing Co.*, 279 Va. 475, 481 (2010) (emphasis added). *See Ashmore v. Herbie Morewitz, Inc.*, 252 Va. 141, 148 (1996) (holding the evidence proved that the "plaintiff relied on the false representation" to her detriment); *Thompson*, 245 Va. at 111 (holding that the plaintiffs failed to prove that they relied on a knowing misrepresentation to their detriment).

With regard to this fifth element of the tort (reliance by the party misled) in the instant case, the complaint alleges that the father "reasonably relied on Starace's fraudulent

representations in that he was forced to reply and defend himself against them in the divorce and custody case." Starace, in her demurrer to the fraud count and her related argument, specifically challenged that element, stating expressly that each of her "purported false or fraudulent statements" were not statements "made to" the father or statements that he "relied upon . . . to his detriment" and therefore could not serve as the basis for the fraud claim. The record makes clear that Starace preserved this ground as a basis for decision by presenting the issue to the circuit court as required by Code § 8.01-273(A). *See Padula-Wilson*, 298 Va. at 579, 581 (affirming the circuit court's dismissal of a defamation claim on a demurrer on "an alternate basis" that the defendant raised below).

The record also makes clear that the complaint does not allege sufficient facts to support this element. The father avers that he defended himself by spending significant sums to *dispute* the representations of Starace that he said were false. This, of course, is precisely the opposite of *relying* on them. *See Sales*, 279 Va. at 481; *Alexander v. Kuykendall*, 192 Va. 8, 14 (1951) (observing that the allegedly false statement must be not only "relied on" but also "believed" by the party claiming fraud (quoting 8 Michie's Jur. *Fraud and Deceit* § 22, at 713)). Accordingly, this allegation fails to satisfy the pleading requirement for the personal-reliance element of fraud.

The father's real allegation is that Starace, as an attorney, had "a general duty to the public not to commit fraud upon the court or . . . other torts, in addition to her professional obligations to the client." While these allegations may constitute an accurate statement of an attorney's duties generally, they, too, fail to meet the pleading requirement for this element of a fraud claim because they do not suggest detrimental reliance *by the father*. *See Sales*, 279 Va. at 481; *cf. N.Y. Tile Wholesale Corp. v. Thomas Fatato Realty Corp.*, 61 N.Y.S.3d 136, 140 (N.Y. App. Div. 2017) (holding that the plaintiff could not state a cause of action for fraud merely because *the court* allegedly relied on the defendants' misrepresentations).

For these reasons, the father failed to plead facts sufficient to satisfy the reliance element of the tort of fraud.  Consequently, we hold that the circuit court did not err by sustaining the demurrer with regard to count four of the complaint.

## C.  Civil Conspiracy

The father's counts of civil conspiracy against the defendants are based on his claims against them for tortious interference with parental rights and fraud.  He cites *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396 (1985), in support of his conspiracy claims.

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish [a] criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means."  *Id.* at 402.  *Hechler* expressly recognizes that "[t]here can be no conspiracy to do an act which the law allows."  *Id.*  Therefore, "to survive [a] demurrer," an allegation of civil conspiracy "must at least allege an unlawful act or an unlawful purpose."  *Id.*  In other words, "a common law claim of civil conspiracy generally requires proof that the underlying tort was committed."  *Almy v. Grisham*, 273 Va. 68, 80 (2007) (recognizing this as the rule in a majority of states that have considered the issue).  Because the father did not allege a viable cause of action for tortious interference or fraud, he has also failed to state a claim for civil conspiracy to commit those torts.[11]

As a result, the circuit court did not err by sustaining the demurrer with regard to counts eight and nine of the complaint.

---

[11] Based on this holding, we do not address the appellees' claim that *conspiracy* to commit tortious interference with parental rights has not been recognized as a cause of action in Virginia.  *See* Levick, 294 Va. at 302.

- 15 -

## II. Temporary Stay of the Proceedings

Finally, the father challenges the circuit court's ruling granting the defendants' motion to stay the proceedings, including discovery, until the Supreme Court issued its decision in *Padula-Wilson*.

An appellate court reviews a circuit court's decision to stay a pending proceeding under an abuse-of-discretion standard. *Nationwide Mut. Ins. Co. v. Estate of Harrison*, 64 Va. App. 110, 118 (2014) (citing *Williams v. Williams*, 184 Va. 124, 127 (1945)). A decision limiting civil discovery is reviewed under the same standard. *Nizan v. Wells Fargo Bank Minn. Nat'l Ass'n*, 274 Va. 481, 500 (2007). "[T]he phrase 'abuse of discretion' means that the circuit court 'has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Sauder v. Ferguson*, 289 Va. 449, 459 (2015) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "This bell-shaped curve of reasonability governing . . . appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Id.* (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)). "[O]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

"[T]he power to stay [a] proceeding[] is incidental to the power inherent in every court to control . . . its docket," taking into account "economy of time and effort for itself, . . . counsel, and . . . litigants." *Primov v. Serco, Inc.*, 296 Va. 59, 67 (2018) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). This power extends, under proper conditions, to permit staying a lawsuit against one party pending the outcome of an appeal in a case involving a different party or parties. *See Landis*, 299 U.S. at 254-55 (opining that a court should exercise this authority "[o]nly in rare circumstances").

Determining how best to address a request for a stay "calls for the exercise of judgment," which requires a court to "weigh competing interests and maintain an even balance." *Primov*, 296 Va. at 67 (quoting *Landis*, 299 U.S. at 254-55). This analysis is best conducted by the judge responsible for trying the case. Factors to be considered involve comparing the "hardship or inequity" to the movant of "go[ing] forward" against the risk of harm to the other party likely to result from a stay. *Landis*, 299 U.S. at 255. A stay is not forbidden simply because "a decision in the cause then pending" is not likely to "settle every question of fact and law" in the stayed suit. *Id.* at 256. To the contrary, if resolution of the pending suit will "in all likelihood . . . simplify" the stayed suit, granting a stay for a period "within the bounds of moderation" is not an abuse of discretion. *Id.* Additionally, where the stay prevents or limits civil discovery, such a restriction does not amount to an abuse of discretion "unless 'the action taken was improvident and affected substantial rights.'" *See Nizan*, 274 Va. at 500 (quoting *O'Brian v. Langley Sch.*, 256 Va. 547, 552 (1998)).

The father claims that no authority permits a court to stay a pending matter "simply because a topically-related matter is on appeal" and, in any event, that the majority of his claims "were not related to" the matter at issue in *Padula-Wilson*. He further suggests that he was prejudiced by the stay because witnesses' memories continued to fade during the delay.

Contrary to the father's argument, one recognized basis for staying a suit at the trial level is to await the outcome of an appeal in a case involving different parties if resolution of the pending suit is likely to control or simplify the stayed suit. *See Landis*, 299 U.S. at 255-56. Although the father avers that the majority of his claims were unrelated to the issue then pending in *Padula-Wilson*, the record contradicts this assertion. In fact, five of the six relevant counts in the complaint alleged tortious interference or conspiracy to commit tortious interference in

part.[12] Additionally, those claims arose in a context similar to that in *Padula-Wilson*, which involved a custody dispute between two parents. Prior to the decision in *Padula-Wilson*, Virginia's only existing case law on tortious interference with parental rights analyzed the cause of action in the context of adoption proceedings, not custody. As made clear in Sections II.A. and II.C., *supra*, the outcome of the appeal in *Padula-Wilson* did, in fact, provide significant guidance for the circuit court in resolving the demurrer's challenges to at least five of the six relevant counts of the complaint. Although this fact would not have justified a stay of indefinite duration, the appellate briefs in *Padula-Wilson* had already been filed when the defendants made their motion to stay the proceeding, and the Supreme Court in fact rendered its decision three months after the filing of the motion. *See Landis*, 299 U.S. at 258.

Additionally, trial in the instant case had previously been set for July 13, 2022—two months after release of the decision in *Padula-Wilson*. The defendants filed a renewed demurrer after the opinion's release. The circuit court was intimately familiar with the bulk of the allegations in the father's complaint, having considered them in the context of ruling on numerous demurrers challenging various counts prior to the father's filing of his fifth amended complaint. Following the release of *Padula-Wilson*, the court sustained the demurrer as to all of the relevant remaining counts within three weeks of the July 13 trial date, obviating the need for any additional discovery on those counts. Accordingly, the relevant counts were resolved without *any* additional discovery, without a trial, and within two weeks of when trial would have

---

[12] The father entered into a settlement agreement with Dr. Small, and the circuit court dismissed the father's "[a]ction" against him with prejudice. This appeal properly names only Huang, Ouspenskaya, and Starace as appellees. *See, e.g.*, *Reston Hosp. Ctr., LLC v. Remley*, 63 Va. App. 755, 766 & n.5 (2014) (recognizing that the settlement of all disputed claims between two parties in a civil suit mooted those claims (citing *Pressley Ridge Sch. v. Shimer*, 134 F.3d 1218, 1219-22 (4th Cir. 1998))). To the extent the father attempts to challenge the stay of discovery with regard to the three counts against Dr. Small, as well as the portion of count eight that named Small along with the other defendants, that issue is simply not before this Court.

occurred if it had proceeded as scheduled.  Under these circumstances, the fact that witnesses'

memories allegedly continued to fade simply was not a relevant consideration.  Therefore,

granting the motion to stay discovery did not affect substantial rights with regard to the

challenged counts, and the circuit court did not abuse its discretion by granting the stay.

*Compare Nizan*, 274 Va. at 501-02 (reversing because the court's ruling "'affected substantial

rights'" by preventing discovery potentially relevant to a "legally cognizable" defense (quoting

*O'Brian*, 256 Va. at 552)).

CONCLUSION

For these reasons, we affirm the circuit court's rulings sustaining the demurrer as to the

challenged counts in the complaint and granting the motion for a stay of the proceedings.

*Affirmed.*